### JEFF D. MANKINS v. THE STATE.

No. 1909. Decided April 20, 1900.

**1. Information—Counts—Motion to Quash—Practice on Appeal.**

Where an information contains two counts and the jury have found defendant
guilty on the first count, exceptions to or a motion to quash the second count will
not be considered on appeal.

**2. Libel—Information or Indictment—Allegations.**

On a prosecution for libel, if the information or indictment by a fair inspection
plainly and unmistakably conveys the idea that the person libeled has been guilty
of some penal offense or has been guilty of such conduct as is disgraceful to him
as a member of society, the natural consequence of which is to bring him into
contempt among honorable persons, then it is not necessary to further allege that
said language so used in the indictment or information as constituting the libel
does charge him with a penal offense or does bring him into disgrace as a member
of society, and the natural consequence of which is to bring him into contempt
among honorable persons. HENDERSON, Judge, dissenting.

**3. Same.**

When an information for libel charged that defendant wrote prosecutrix a
letter in substance to the effect that he had seen her having carnal intercourse
·with a man, this was sufficient, and it was not necessary to further allege that
the statement made by him in said letter was calculated to bring her into disgrace

and the natural consequence of which was disgraceful to her as a member of society.

**4. Same—Construction of Statute.**

Article 727 of the Penal Code makes the various acts therein mentioned per se libelous, and declares that a person is guilty of libel who, "with intent to injure, either makes or writes, prints or publishes, sells or circulates, any malicious statement affecting the reputation of another," etc.

**5. Same—Letter Containing Libel.**

Where an information for libel is based upon libelous matter contained in a letter purporting to have been written to the prosecutrix and alleged to have been placed in the United States postoffice at a certain town, it was not necessary that the information should further allege that said letter was addressed to anyone, since the depositing of the letter in the mail was a sufficient publication. HENDERSON, Judge, dissenting.

APPEAL from the County Court of Williamson. Tried below before Hon. W. F. ROBERTSON, County Judge.

Appeal from a conviction of libel; penalty, a fine of $1500.

The opinion sets out the charging part of the first count of the information upon which the conviction was had, and the opinions state the case sufficiently.

*W. K. Makerson,* for appellant.—There are three counts in the information. The first is for libel; the second for slander, and the third for sending a threatening letter. Appellant's motion to quash the information was sustained as to the third count and overruled as to the first and second counts. The county attorney dismissed the second count and appellant was tried on the first count, libel.

Appellant insists that the information is not sufficient in that it does not charge any offense known to the laws of this State, in this, that it fails to allege and charge in specific terms that the alleged libel imputed to the prosecutrix, Miss May Fan Richey, an act or omission disgraceful to her as a member of society, the natural consequence of which was calculated to bring her into contempt among honorable persons; nor does it specifically point out by necessary allegations or averments any one of the five statutory elements as defined by the Penal Code. Penal Code, arts. 721, 727; Nordhaus v. State, 40 S. W. Rep., 804; McKee v. State, 40 S. W. Rep., 305; Byrd v. State, 44 S. W. Rep., 521; Smith v. State, 45 S. W. Rep., 1013. For which error appellant insists this case should be reversed and dismissed.

At common law libel was prohibited and punished solely on account of its tendency to provoke a breach of the peace; under our statute it is made an offense and punished only on account of its tendency to injure the reputation of a person; that is, the person or persons to whom or against whom the scurrilous charge is intended by the maker to be applied or imputed. See Coulson v. State, 16 Texas Crim. App., 189.

It is insisted that to constitute libel under our statute the alleged libel must be published or circulated. It is the publicity of the contents of the alleged libel that makes it criminal. The inhibited ac-

cusation or imputation must in some way have been brought to the knowledge of some person or persons other than the party against whom the libelous accusations are made. The alleged libel, of and by itself, has no criminal character whatever until its contents have been made known to others than the alleged maker and party alleged to have been defamed. A person who knowingly prints, publishes, or circulates a libel is equally as guilty as the one who writes or makes it. Penal Code, arts. 721, 723, 725, 726.

If the above is the law, then it is insisted that under the facts in this case the alleged letter is not a criminal libel for the reason that it is an uncontroverted fact that when it reached the hands of the prosecutrix, Miss May Fan Richey, it was inclosed in a sealed envelope and no one knew its contents but the author. It was delivered to her by her brother, the State's witness, Tom Richey, in a sealed envelope which he had taken from the postoffice. He did not know the contents until some hours after he had delivered it to her, when she told him what it contained, and she alone is chargeable and responsible for whatever publicity or notoriety it attained. Until the prosecutrix opened and made known the contents, there had been no violation of law because its contents had not been published, circulated, or made known to anyone. The fact that she had knowledge of its contents after she had opened and read the letter did not make it a criminal libel, because her individual knowledge of it could not possibly affect her reputation and standing among honorable people, because no one knew the accusation had been made against her.

It is insisted that such circulation does not bring it within the statutory definition of libel. Can it be said that the party against whom the libelous accusation is made can contribute one of the essential elements of the transaction in order to make the alleged act of the accused criminal, and without which it was not? Hence it is insisted that the circulation or publicity given to it by her does not bring it within the statutory definition of a criminal libel. It is true that Coulson v. State, 16 Texas Criminal Appeals, 189, in almost a parallel case, holds the contrary, but it will be observed that Judge White, who rendered the decision, based it on Smith v. State, 32 Texas, 595. On examination of that case it will be found that the alleged libel was written, signed, and posted under sealed cover, and sent through the mails by the defendant, Smith, to one F. W. Read, and that it among other things defamed and denounced one B. Rush Plumley as a "hireling," "murderer," etc. Justice Lindsey, who rendered the opinion, decided that sending the letter through the mails brought it within the meaning of the term "circulation" as applied to libel, but it will be observed that in that case the letter was sent to a third party and publicity of its contents was given by him and not by the party defamed, which feature marks the differentiation of that case from the case at bar.

For these reasons we respectfully submit that the facts in this case do not bring the alleged defamatory letter within the meaning of a

criminal libel, and for that reason the case should be reversed and dismissed.

. The court erred in its charge as to the province of the jury, to wit: "You are further instructed that in this case you are the judges not only of the facts proved but of the law given you in charge by the court."

Under this charge the jury were authorized to ignore and disregard every legal right guaranteed to appellant by the Constitution and laws. We insist such is not the law. "In all cases for libel the jury have the right to determine the law and the facts under the direction of the court, as in other cases." Bill of Rights, sec. 8; Penal Code, art. 748.

. *T. S. Smith*, Attorney-General, and *D. E. Simmons*, Office Assistant Attorney-General, for the State.—The information having charged that the written instrument was circulated by someone depositing it (the letter) in the postoffice at Georgetown, was sufficient without alleging that said postoffice was then and there a public place, as required by law. Smith v. State, 32 Texas, 594; Coulson v. State, 16 Texas Crim. App., 189; State v. Avery, 7 Conn., 269; Baldwin v. State, 39 Texas Crim. Rep., 245; Penal Code, art. 726.

It was not necessary to allege in the information that the instrument charged an act which was disgraceful to prosecutrix as a member of society, the natural consequence of which was to bring her into contempt. When the information sets out the libelous matter which per se conveys any one of the ideas as specified in article 727 of the Penal Code, the allegation that the words did convey such idea would be mere waste of words and would serve no useful purpose. Special attention is called to Jones v. State, 38 Texas Criminal Reports, 364; More v. Bennet, 48 N. Y.; Cooper v. Greely, 1 Denio, 358. The fact that the imputation of a want of chastity contained in the letter might make the case one of slander as well as libel does not affect the validity of the information. It was not necessary to allege that defendant knew the contents of the letter, or that with malicious design he read or exhibited it to others. Where, as in this case, it is alleged that defendant was the maker and writer of the libelous letter, these allegations take the place of the word knowingly.

Defendant's third bill of exception is to the testimony of the State's witness Tom Richey, to the effect that he received the letter in question from the postoffice and delivered the same to May Fan Richey; the ground of objection being, that there was no allegation in the information setting forth "such method of circulation." This exception is not well taken, for the reason that it is part of the testimony which establishes a fact, which fact, to wit, circulating the libel, was alleged in the information. We think that it was unnecessary to allege that which is merely testimony. We take it that the same objection urged in this bill would be equally applicable to a case of publication. In the case of Baldwin v. State, 39 Texas Criminal

Reports, 245, the court says: "With regard to the first contention, it was not necessary for the information to have alleged the publication to have been in a newspaper in order to have admitted proof of the publication in a newspaper."

Special exception is taken to the following charge of the court: "You are further instructed that in this cause you are the judges not only of the facts proven but of the law given you in charge by the court."

Counsel here gives an interesting history of the law of libel in England and the different States of the Union, to show why in libel cases the jury are made the judges of both law and the facts, subject to the instructions of the court, as in other cases, and they cite the Bill of Rights upon the subject as contained in all the Constitutions of Texas; the British Libel Act, 1792, Statutes at Large, 30-32, George III, vol. 37; Rex v. Burdett; Queen v. Sullivan; State v. Armstrong, 106 Mo., 418; Castle v. Hueston, 19 Kan., 100; State v. Verry, 36 Kan., 418; People v. McDonell, 71 Cal., 194; Mitault v. Sessions, 101 Mich., 289; Drake v. State, 53 N. J. L., 26; Penal Code, art. 748; Code Crim. Proc., art. 714.

BROOKS, JUDGE.—Appellant was tried and convicted in the County Court of Williamson County, of the offense of libel, the jury returning the following verdict, to wit: "We, the jury, find the defendant guilty as charged in the first count of the information, and assess his punishment at a fine of $1500."

The first count of the information is as follows, to wit: "That Jeff D. Mankins, on or about the 24th day of May, 1898, in the county of Williamson, State of Texas, with intent to injure Miss May Fan Richey, an unmarried female, did unlawfully, wickedly, and maliciously make, write, and circulate, by depositing in the United States postoffice, at Georgetown, Texas, there situate, a malicious statement and defamatory libel, affecting the reputation of the said Miss May Fan, Richey, according to the tenor and in words and figures, that is to say: 'Georgetown, Texas, May 23rd, 1898. Miss May Fan Richey: Will write you a few lines in reference to a little affair that occurred about two weeks ago. Two weeks ago yesterday I happened to be down on the fair grounds, and saw you and a certain young man— Well, you know what occurred. I happened to be close by, and saw the whole performance (thereby meaning that the said Miss May Fan Richey was seen in the act of copulation with a man). It was all mighty nice, but I would like to have some of it (thereby meaning sexual intercourse) too. Now, I am a friend of you; but if you want me to keep quiet, and not say anything, you will have to come up and help a poor fellow out (thereby meaning consent to sexual carnal intercourse). I am a friend to you, and all your family, but if you do not treat me right you can't expect me to treat you right. We can have a nice time (thereby meaning sexual carnal intercourse), and no one will know anything of it. There will be no use

of you trying to catch onto my handwriting, for I have changed it., Now, I will be at the new fence, just back of your father's barn, to-morrow night, and if you want to do me right, meet me there about 9 o'clock or 8:30. If you can't come that soon, come as soon as you can. I will expect you. Come out and talk to me, anyway. You need not put your father or brothers out to lay for me, for I will be fixed for all that. Will wait till late for you. If you don't come, I will put all the boys in town onto it (thereby meaning to tell all the boys in town about the act of copulation), and you will never know who did it. Now, meet me, and we will have a nice time (thereby meaning to have sexual carnal intercourse), and no one will ever know anything about that other (thereby meaning the act of copulation) or what we do, either. Yours, without a struggle. You will know who I am when you meet me.' "

Appellant specially excepted to the first count for the following reasons: (1) The complaint and information on their face allege the libelous instrument to be written manuscript, and charge that the same was circulated by depositing in the postoffice at Georgetown, Texas, without alleging said postoffice was then and there a public place, as required by law; (2) because said count fails to specifically allege that said libelous instrument charged an act of omission, which though not a penal offense, was then and there disgraceful to the prosecutrix as a member of society, and the natural consequence of which was to bring her into contempt among honorable persons, or to specifically allege either of the statutory elements of libel, as required by article 727, Penal Code; (3) because the written instrument, as set out in hæc verba in this count, imputed a want of chastity upon an unmarried female, and is, if any offense whatsoever, slander, to which offense there is a less penalty attached than to libel; (4) because the allegation charging the circulation of said libel fails to allege that defendant knew the contents of the same, or that he, with malicious design, read or exhibited it to others. Then appellant follows with various exceptions to the second count of the information. We will not consider these grounds for quashing the information, in view of the fact, as indicated above, that the jury found appellant guilty under the first count of the indictment.

Article 727, Penal Code, provides: "The written, printed or published statement to come within the definition of libel, must convey the idea either (1) that the person to whom it refers has been guilty of some penal offense; or (2) that he has been guilty of some act or omission which, though not a penal offense, is disgraceful to him as a member of society, and the natural consequence of which is to bring him into contempt among honorable persons; or (3) that he has some moral vice, or physical or mental defect or disease, which renders him unfit for intercourse with respectable society, and such as should cause him to be generally avoided; or (4) that he is notoriously of bad or infamous character; or (5) that any person in office, or a candidate therefor, is dishonest, and therefore unworthy of such office, or that

while in office he has been guilty of some malfeasance rendering him unworthy. of the place."

It will be noted from the foregoing that appellant strenuously insists the information must not only state facts which authorize the prosecution within one or the other of the provisions of the above ·quoted article, but that the pleader must state that said facts come within one of said clauses of said statute, stating the clause. We ·do not think this position is correct. The article states that "the written, printed, or published statement to come within the definition ·of libel, must convey the idea (1) that the person to whom it refers has been guilty of some offense," etc. Certainly it was not within the contemplation of the Legislature in passing this article to make it imperatively the duty of ihe pleader to say which clause of this ·statute or article is violated by the libelous language, but the language of the article upon its face shows the Legislature intended to say, if the libelous language came within either clause of the statute, by reasonable and natural purport of the language used in the libelous ·article, then it is libelous. If it does not come within the reasonable ·and natural meaning, of one of the clauses of article 727, then it is not libel. Certainly, the Legislature did not intend to say that if A. publishes a libelous statement about B., in· which B. is charged with having stolen a horse, the pleader must not only allege the libelous statement made by A., but must go further in the information ·or indictment, and allege, "which said statement charged B. with being guilty of some penal offense against the laws of Texas." If A. charges B. with being guilty of theft, it is libelous per se, and it would not make it any more so to say it was a penal offense against the laws of the State of Texas to steal. On the other hand, if a person is charged with conduct clearly disgraceful to him as a member of society, and the natural consequence of which is to bring him into contempt among honorable persons, then clearly it is not necessary, where the language imports and shows this to be the purpose, to allege that said libelous statement does disgrace him as a member of society, and the natural consequence of which is to bring him into contempt among honorable persons. We· are aware of the fact that appellant's contention in this regard is apparently borne out by a line of decisions of this court, and the following cases uphold in the main the contention of appellant, in reference to this particular defect in the information, to wit: McKie v. State, 37 Texas Crim. Rep., 544; Squires v. State, 39 Texas Crim. Rep., 97; Nordhaus v. State (Texas Crim. App.), 40 S. W. Rep., 804; Byrd v. State, 38 Texas Crim. Rep., 630. But we think the proper rule in reference to indictment on libel is aptly stated in Jones v. State, 38 Texas Criminal Reports, 364. In the concluding part of the opinion in that case, this language appears: "These charges attribute to said conductors that they were of notorious, bad, or infamous character, and, as .the prosecution in this case was under all of said allegations, if the proof sustained any one it was sufficient. It will be further noticed, by refer-

ence to the allegations in the indictment, that there are innuendo averments contained therein sufficiently explanatory of said statements in said publication. But, if there had not been, we hold that they were sufficient in and of themselves to constitute libel without innuendoes. The statements in the publication were so plain and unmistakable in their meaning that no intelligent person could fail to understand and comprehend what was intended by them." We therefore hold that if the indictment or information, by a fair inspection, conveys the idea that the person has been guilty of some penal offense, or has been guilty of such conduct as is disgraceful to him as a member of society, and the natural consequence of which is to bring him into contempt among honorable persons, then it is not necessary to allege that said language in the indictment or information does charge him with a penal offense, or does bring him into disgrace as a member of society, and the natural consequence of which is to bring him into contempt among honorable persons.

Our statute on libel is somewhat broader, we take it, than the common law. Article 721 reads: "He is guilty of libel who, with intent to injure, makes, writes, prints, publishes, sells or circulates any malicious statement, affecting the reputation of another in respect to any matter or thing pointed out in this chapter." Then follow various articles, including article 727, above quoted. Now, a bare inspection of this article will show that various acts are made libelous by the very terms and words of said article; that is to say, a person is guilty of libel who, "with intent to injure, either makes, or writes, or prints, or publishes, or sells, or circulates any malicious statement affecting the reputation of another," etc.

In his motion in arrest of judgment appellant insists upon the quashal of the information because it does not show to whom the letter was addressed. The information alleges that appellant "did unlawfully, wickedly, and maliciously make, write, and circulate, by depositing in the United States postoffice at Georgetown, Texas, a malicious statement and defamatory libel, affecting the reputation of the said Miss May Fan Richey;" and then follows the defamatory letter,—the letter itself being addressed to Miss May Fan Richey. We are not without some authority on this question in our own State. In Coulson v. State, 16 Texas Criminal Appeals, 189, we held that the writing of a letter, and depositing it in the postoffice for transmission to the party addressed, constituted a publication of it, within the law of libel. Mr. Bishop says, "One publishes a libel who sends it to a single individual;" and this, we are of opinion, is the law with us, provided the private letter or instrument be of such character as that if made public it would affect the reputation of the party about whom it was written. However, whether this authority be in point upon this particular question, we hold that the placing of the letter in the mail, coupled with such additional proof as is necessary under the law of libel, is sufficient publication of the same, regardless of whether said letter was addressed to the prosecutor, or to whom it

was addressed, and regardless of whether it was addressed at all. Hence we hold it was not necessary for the information to show that the letter was addressed. Having been placed in the United States postoffice at the town of Georgetown, and proof of the fact having been made that appellant did make and write said letter, make appellant guilty, provided it was done with intent to injure, regardless of whether he circulated the same or not. In Giles v. State, 6 Georgia, 281, Judge Lumpkin (one of the most learned judges that ever adorned any court of last resort), delivering the opinion of the court, we find authority, very much in point in this case on various questions raised by appellant. In the indictment in this case appellant contended that the following was a sufficient averment of the publication of the libel, to wit: "It charges that David Giles, the defendant, on the 6th day of July, 1847, did maliciously and falsely 'utter and publish—that is to say, did then and there write and fasten upon the side of a tree in a public place, where it could be there read—the following malicious defamation in writing, of and concerning one William Thompson and others,' etc. It was objected that it should have been alleged that the libel was read. Was this necessary? If so, then the fact that it was read should have been proven also. We are of opinion that neither was requisite to constitute the offense. * * * We say of an author that he has published a book when he has given its contents to the world; and we speak of the publication of a will, without meaning to denote that the contents of the instrument have been actually communicated. So it is with a libel. 'Publication,' says Best, J., in Rex v. Burdett, 4 Barn. & Ald., 95, 'is nothing more than doing the last act for the accomplishment of the mischief intended by it. The moment a man delivers a libel from his hands, his control over it is gone. He has shot his arrow, and it does not depend upon him whether it hits the mark or not. There is an end of the locus penitentiæ; his offense is complete; all that depends upon him is consummated; and from that moment, upon every principle of common sense, he is liable to be called upon to answer for his act.' So, then, the mere delivering over or parting with the libel is a publication. There need be no averment or proof of the actual communication of the contents of the paper." We think this authority is decisive on the question contended for by appellant, that there is not sufficient allegation to authorize the introduction of the letter, and there is not sufficient allegation of the publication of the letter.

Now, recurring to the first objection urged by appellant, that the indictment should allege it comes within one of the subdivisions of article 727 in order to make a good information, the learned judge in the above cited case uses this language, to wit: "Many minute and ingenious exceptions are taken to the indictment for want of proper innuendoes to give certainty to the libel; to all of which our answer generally is that the office of the innuendo is to point out and refer to matter already expressed; to explain the meaning of the publication, when it is obscure; and to designate the persons alleged

to have been libeled, when they are alluded to in covert and ambiguous terms. But where the paper itself points out, with sufficient clearness, the persons of or concerning whom it is written, and likewise the purpose for which it was written, the office of the innuendo is superseded,—no explanation is necessary." The libel in the case now under discussion among other things accused the prosecutor of being a Tory, and appellant's counsel ably insisted there should have been innuendo averments showing the word "Tory" had a disgraceful meaning attached to it, such as would bring prosecutor into disgrace among his fellows. The learned judge, in answer to this contention, uses this strong language: "But the enormity of this libel stops not here. As if to involve its victim in the lowest depths of infamy and disgrace, he is accused, not only of being a Tory in the War of the Revolution, but with having been punished in the most ignominious manner for the robberies which he then committed. When the name of Washington shall grow old and cold to the ear of the patriot; when it shall be synonymous with that of Arnold; when 'the poles of the earth shall be swung round ninety degrees, to a coincidence with the equator,'—then, and not before, will it cease to be a libel to call a man a plundering Tory of the Revolution." Recurring to the information in this case, we find appellant in substance writes the prosecutrix that he (appellant) had seen prosecutor in an act of sexual intercourse with a man. As long as virtue has a habitation and a home in this country, just so long will it not be necessary to allege that such language used about a female was and is calculated to bring her into disgrace as a member of society, and the natural consequence of which libel is to cause her to merit the contempt of all honorable persons; and to say it is necessary to allege this as the consequence is taking a position that we can not agree with, since it violates both the spirit and letter of the statute, and is entirely unnecessary from any rule of pleading.

There are various other assignments of error urged by appellant, but we do not deem it necessary to consider them. After a careful review of all of them, we hold there is no error in the ruling of the court. The evidence is clear, and manifestly sufficient to support the verdict, and the judgment is in all things affirmed.

*Affirmed.*

HENDERSON, JUDGE.—I do not agree to the views expressed by a majority of the court, and herewith express my reasons for dissent. Appellant was convicted of libel, and his punishment assessed at a fine of $1500, and he prosecutes this appeal. Appellant made a motion to quash the complaint and information on various grounds, but we will only consider those which relate to the first count, inasmuch as the conviction was had on said count. The grounds set out are as follows: "(1) The complaint and information on their face allege the libelous instrument to be a written manuscript, and charge that the same was circulated by depositing it in the postoffice at George-

town, Texas, without alleging that said postoffice was then and there
a public place, as required by law; (2) because said count fails to
specially allege that said libelous instrument charged an act or omis-
sion which, though not a penal offense, was then and there disgraceful
to the prosecutrix as a member of society, and the natural conse-
quence of which was to bring her into contempt among honorable
persons, or without specially alleging either of the statutory elements
of libel, as required by article 727, Penal Code."

An examination of said information discloses that it does allege
that appellant "did make, write, and circulate by depositing in the
United States postoffice at Georgetown, Texas, there situated, a ma-
licious statement and defamatory libel, affecting the reputation of
said Miss May Fan Richey, according to the following tenor," etc.;
then setting out the instrument in hæc verba. Our statute is aimed
at the maker, as well as the publisher, of a libel. However, the bare
making of a libel, by writing or otherwise, with no intent to publish
it, would not constitute the maker guilty of an offense, according to
the authorities on the subject. We will accordingly discuss the ques-
tion from the standpoint of a sufficient allegation as to circulation
or publication. Now, it is alleged that the manuscript in question
was circulated—that is, published—by depositing same in the United
States postoffice at Georgetown; that is, the pleader in this informa-
tion has attempted to set out the alleged manuscript was published.
It will be observed, it does not state that said manuscript was done
up in a package in the form of a letter, and addressed to Miss May
Fan Richey at her postoffice, naming it, postage prepaid, but merely
that it was deposited in the postoffice. The pertinency of this objec-
tion becomes more obvious when the State came subsequently to
introduce testimony as to the delivery of said manuscript, and offered
proof of the envelope, with its address, and that Tom Richey, her
brother, procured said letter from the postoffice, and delivered it to
his sister. All this testimony was objected to on the ground that there
was no sufficient allegation in the information. The court in admit-
ting said testimony evidently assumed that the allegation "that said
manuscript was deposited in the postoffice" was tantamount to saying
that same was properly addressed and deposited in the United States
mail. The allegation we do not believe is sufficiently accurate and
certain to have authorized said proof. Moreover, some of the authori-
ties hold, and we think with good reason, that a letter such as this is
only published when it reaches the sendee, and the address of the
sendee should be alleged so as to show venue. We hold that the
allegation here with reference to the publication is defective. State
v. Barnes, 32 Me., 530; 2 Whart. Crim. Law, 1620; Whart. Crim. Ev.,
sec. 113.

Appellant also insists that the information should have been
quashed because, even if it had been sufficiently alleged that said
manuscript was properly inclosed in an envelope, and addressed to
Miss May Fan Richey, at her proper postoffice, postage prepaid, and

then deposited in the United States mail, that same would have alleged no publication, because it was a private letter, not sent to a third person, but to the person alleged to be libeled. I do not agree to this contention, and it is not a new one in this State. The question was before the court in Coulson v. State, 16 Texas Criminal Appeals, 189, and it was there held that a private letter written by appellant to the prosecutor, and not shown by appellant to anyone, and not intended by him to be seen by anyone but ·the prosecutor, was a sufficient publication. The court, after reviewing the authorities, say "that if one publishes a letter libeling an individual, and sends it to him, he is guilty of this offense, provided the letter be of such character as that, if made public, it would affect the reputation of the party about whom it was written." And to the same effect, see note to Rex v. Johnson, 7 East, 65, reported in 2 Lead. Cr. Cas., p. 432; Rex v. Burdett, 4 Barn. & Ald., p. 143; Reg. v. Brooke, 7 Cox, C. C., 251; State v. Avery, 7 Conn., 269; 2 Bish. Crim. Proc., p. 784, sec. 5. So it occurs to me, if the information had sufficiently alleged the matter of publication through the United States mail, it would have been sufficient.

Appellant also objects to the information on the ground that there was no allegation charging that by the use of said language appellant intended to convey the idea that Miss May Fan Richey was guilty of a penal offense then and there disgraceful to her.as a member of society, and the natural consequence of which was to bring her into contempt among honorable persons (this being the only one of the five grounds in article 727, Penal Code, under which this prosecution would lie). This question has recently been before this court in several cases. See McKie v. State, 37 Texas Crim. Rep., 544; Squires v. State, 39 Texas Crim. Rep., 97; Nordhaus v. State (Texas Crim. App.), 40 S. W. Rep., 804; Byrd v. State, 38 Texas Crim. Rep., 630; Jones v. State, 38 Texas Crim. Rep., 364. In the Nordhaus case, supra, ·this matter was thoroughly discussed by the writer, and, speaking for the court, it was there held that the information, after setting out the alleged libelous matter, should further state that it was intended thereby to convey one or more of the five ideas set out in article 727, Penal Code, as that defendant intended to convey the idea that the party-was guilty of some penal offense. And this view appears to have been followed in all of the cases above cited, except the Jones case. In that case we held that it was not necessary to allege either of said five grounds; that it is only required to set out the libelous matter, and allege that the same affected the reputation of the person libeled; and that the court would construe the libelous matter, and apply it to either one or more of the five grounds set out in article 727, Penal Code. It does not appear that any reference was made in said case to the former decisions on the subject. The writer believes it the safer and better practice to follow the rule laid down in Nordhaus v. State, supra. When this is done, the

accused party will know exactly of what offense he is charged, and this is the object of all good pleading.

Appellant objected to the introduction of the letter used in evidence, on the ground that it was at variance from that set out in the information, and was neither substantially nor literally the same written instrument or letter alleged or set forth in the information. He claims that said variance consists in what are termed "innuendoes;" that is, that the original letter offered in evidence contained no innuendoes, while the letter set out in the information did contain innuendoes. I do not think this objection to the information is tenable. It may have been better for the pleader to have placed said innuendoes in parentheses, or to have shown them to be innuendoes by more precise and definite allegation or arrangement. Still, if the innuendoes were meaningless, they could be rejected as surplusage. 1 Bish. Crim. Proc., sec. 480, subdiv. 4. If the allegations in the letter itself, by a plain reading, affected the reputation of Miss Richey, then the same would be sufficient without any innuendoes. It occurs to me there is no question that by this language, found in said letter, to wit: "Two weeks ago yesterday I happened to be down on the fair grounds, and saw you and a certain young man— Well, you know what occurred. I happened to be close by, and saw the whole performance,"—was the use of language which affected the reputation of Miss Richey, and conveyed the idea that she had been guilty of some act or omission which, though not a penal offense, was disgraceful to her as a member of society, and the natural consequence of which was to bring her into contempt among honorable persons. Still, to make this plain, and give it point, in my opinion the pleader should have used in that connection, following the sentence quoted, an innuendo; that is, "meaning thereby that he, the said Jeff D. Mankins, had seen Miss May Fan Richey in the act of carnal intercourse with a certain young man." The other expressions found in the letter are more in the nature of threats and menaces, emphasizing what had gone before, and made evidently for the purpose of inducing her to comply with his desire to copulate with her. It is not necessary here to express an opinion as to whether of themselves they are libelous.

I believe before the letter was introduced in evidence it should have been more definitely identified by the witnesses as the letter received by Tom Richey from the mail and delivered by him to the prosecutrix.

The following charge was also excepted to: "You are further instructed that in this case you are the judges, not only of the facts proven, but of the law given you by the court." This is not the language of our statute or Constitution on the subject. We quote that language as follows: "In all indictments for libel, the jury shall have the right to determine the law and the facts, under the direction of the court, as in other cases." Bill of Rights, art. 1, sec. 8. So it would seem that the charge given was more latitudinous than the

Constitution authorized. It, in effect, made the jury superior to the court, and authorized them to disregard the law as given them, if they saw fit. I am not prepared to say but that this charge was calculated to confuse and mislead the jury as to their functions.

Appellant insists the court erred in refusing to give his special instruction on the subject of proof of handwriting by comparison, to the effect that such evidence was not sufficient to authorize the establishment and proof of handwriting; that this charge was especially required, in view of the fact that appellant filed a plea of non est factum, under article 794, Code of Criminal Procedure. If this proof of his handwriting by comparison had been the only testimony tending to show that appellant was the author and publisher of said libelous statement, the charge in question should not only have been given, but the jury should have been instructed to return a verdict of not guilty. But, in addition to the proof of handwriting by comparison, the State also offered other testimony tending to show that appellant was the author of said libel. The libel in question was an accusation against the prosecutrix that she was guilty of an act of carnal intercourse with a certain party, and contained a proposition that he would keep mum in regard to said transaction if she would agree to have carnal intercourse with him at a designated time and place; otherwise, he would traduce her reputation. The letter was not replied to, but the young lady exhibited the same to her brother on the day of its receipt, and he arranged with an officer to lie in wait at the place appointed by the writer of the letter, in order to detect and arrest the guilty party. Appellant appeared at the appointed time and place, and under circumstances which tended strongly to show he was the writer of the letter in question. This evidence was certainly cumulative of the testimony in regard to handwriting by comparison, and I think that the charge given on circumstantial evidence was appropriate and all that was required, and the court did not err in refusing to give the special requested instruction.

It is not necessary to discuss other assignments; but for the errors discussed I believe the judgment should be reversed, and the cause dismissed, to the end that a new information should be presented.

[NOTE.—Appellant's motion for rehearing was overruled without a written opinion.—Reporter.]