## A. M. LOCKHARD v. THE STATE.

### No. 2020. Decided May 16, 1901.

**1.—Libel—Information.**

An indictment or information for libel is good and sufficient which, upon fair inspection, conveys the idea that the libelee has been guilty of some penal offense, or has been guilty of such conduct as is disgraceful to him as a member of society, and the natural consequence of which is to bring him into contempt among honorable persons.. And in such case it is not necessary to further allege that the language in the indictment or information does charge him with a penal offense or does bring him into disgrace as a member of society and the natural consequence of which is to bring him into contempt among honorable persons. Following Mankins v. State, 41 Texas Criminal Reports, 602. [See information set out in the opinion in full, which is held good.]

**2.—Libel—Evidence.**

Where defendant was charged with circulating a libelous pamphlet, testimony of a witness is admissible to the effect that he had seen a copy of the pamphlet and heard defendant make a statement in regard to it; and such evidence is not inadmissible because the pamphlet seen by the witness was not the original declared on in the information, nor because it was a pamphlet circulated subsequent to and independent of the one declared on, the said pamphlet being an exact copy of the one declared on. Nor was such testimony obnoxious to the objection that it was secondary in character. The testimony was further admissible as going to show motive, malice, and intent on the part of defendant in circulating the paper charged in the information.

Appeal from the County Court of Travis. Tried below before Hon. A. S. Walker, County Judge.

Appeal from a conviction of libel; penalty, a fine of $250.

The opinion below sets out the information in full, as also the objections and exceptions urged against its validity; and the evidence adduced in support of the prosecution in the court below which was objected to, is as follows:

The witness A. C. Kreisle, testified: "Defendant, at about 8 p. m. on the —— day of ————, 1899, at place of business of witness' brother, a different place from Bolton's saloon, tried to sell him a National cash register. Witness did not wish to buy. Defendant then threw on the counter a circular, and said he had been arrested for circulating it, and asked me if I thought there was anything in it." The witness was shown a paper and he said: "Yes, the paper shown me resembles the one the defendant asked me to read. The defendant took the paper he showed me, after I had looked at it. I do not know where it is now. The affidavit in the circular shown me by defendant was in the same words as the affidavit handed to me now, so far as I can remember, and to the best of my knowledge and belief. To the best of my knowledge and belief the circular now shown me is an exact copy of the one shown me by defendant."

Mr. Bruck testified: "Defendant came to my place about 8 or 9 o'clock on the day he was arrested, and tried to sell me a National cash register. I did not care to buy. Then he tried to trade me for the one I had. This I declined. He then pulled out of his pocket a folded circular and laid it on the counter. On this circular was in large red letters the word 'Blocked.' He asked me to read it. I declined to do so. He then picked it up, opened it and told me to read it; that he could not do so himself. I read it. The circular here shown me is in size and appearance the same as the one handed to me by defendant. The pictures on them are the same. Some of the circular he did not read, but the rest of it was the same as the one he held in his hand. There are many words, phrases and sentences on the paper I hold in my hand that I have no recollection of seeing on the paper shown me by defendant. I do not know where the circular is that defendant showed me. He took it when he left my store, which is one-half a square from Bolton's."

Robert Bolton testified: "On an afternoon J. Block and one Pence were in my saloon. Defendant came in and introduced himself to me and began talking about selling me a National cash register. I told him I had just ordered a Hallwood register from Mr. J. Block. Defendant said I had better look out, or I would not get what I ordered, nor be treated right by Block, and at the same time threw down on the counter a circular,—calling my attention to an article, dated. Houston, Texas, and signed W. J. De Merritt, and sworn to before N. M. Norfleet. I noticed on back of circular in large red print, the word 'Blocked.' I then read the latter part of the circular, commencing thus: 'I forwarded the draft to Dallas,' and thence to the end, including signatures. Other than as stated I did not read. The general size and appearance of said circular are similar to the one here shown me. The pictures are the same, and the words read are the same in both circulars. I do not know

if the two circulars are duplicates of one another, and will not swear that they are the same. The latter part of them are alike, and that is as far as I will go in swearing. To the best of my knowledge and belief they are the same."

J. Block testified: "I am the J. Block who had the transaction with De Merritt, mentioned in the circular in this case. I was in Bolton's saloon at the time he mentions. Defendant pulled out a circular, opened it, and folded it back, and held it in his hand and leaned over the counter, in the direction of Mr. Bolton, and pointed out to Mr. Bolton the part he wanted him to read, and asked him to read it. Bolton read a part of the circular, and then defendant put it back in his pocket. I was standing eight or ten feet away from Bolton and defendant. I could not and did not read what was on the circular. I only saw the word 'Blocked,' in large red print, on the back of the circular, the pictures on it, and its general shape and appearance. They were all like the ones on the circular now here shown me. I have not paid the $50 draft I gave to De Merritt."

*George F. Pendexter, Walton & Hill,* and *W. M. Walton,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of libel under an information, and his punishment assessed at a fine of $250. A jury was waived, and the court, after hearing the facts, assessed appellant's fine as above stated. The charging part of the information is as follows:

"That on or about the 31st day of October, A. D. 1899, one A. M. Lockhard did then and there, with the intent to injure J. Block, did unlawfully and maliciously make, write, print, publish, sell and circulate a malicious statement of and concerning J. Block, and affecting the reputation of the said J. Block, to the tenor following, to wit:

" 'Blocked. Houston, Texas, June 30, 1899. To Whom It May Concern: Some time in July, 1898, I was approached by Mr. J. Block, sales agent of the Hallwood Cash Register Company of Columbus, Ohio, on the question of buying one of their multiple counter cash registers. I told him I was not in the market for a register, but he insisted on leaving one in my store for me to try. While the above-mentioned register was in my place, Mr. Pierre G. Keene, sales agent for the National Cash Register Company of Dayton, Ohio, called on me, and offered me a multiple counter National cash register for less money. Being satisfied that the National register was better, I told Mr. Block that I would buy the National register, whereupon Mr. Block informed me that the National people would not ship the register in question; furthermore, could not build it; and offered me $50 if the National Cash Register Company would accept my order and fill it, assuring me at the same

time that the offering of this register for sale was merely a bluff on the part of the N. C. R. Co. Thinking this a fair proposition, I placed my order with Mr. Keene for a multiple counter National cash register No. 300, whereupon Mr. Block gave me a draft for $50. In the course of a few weeks the National register arrived; and, after satisfying myself that it would do the work claimed for it, and that it contained all the features that Mr. Block stipulated that it should contain, I forwarded the draft to Dallas for collection, but it was returned unpaid, accompanied by a note from Mr. Hirsch, Mr. Block's partner, saying that Mr. Block was out of the city, but would pay me upon his return. This Mr. Block failed to do, and, after repeated trials to collect this money from Mr. Block, I gave it up, concluding that my time was too valuable to spend in trying to collect money from an unprincipled sales agent. F. J. De Merritt.

" 'Subscribed and sworn to before me.  [Seal.] N. M. Norfleet, Notary Public in and for Harris County, Texas.'

" '[Picture.]  No. 300.  Department National Cash Register. This register is fitted with four department counters. They can be used to give the total cash sales, total credit sales, total money received on account, and total money paid out, or to show the total amount of cash sales made by each of four clerks, or the total amount of sales made in each of four departments.'

" '[Picture.]  No. 35.  Department Total-Adding National Cash Register. This register is fitted with two department counters, and is used for keeping a seperate record of cash sales and credit sales, or of the cash sales of two clerks, or for the cash sales of two departments in a store.

" 'Our Three Guaranties: 1. We guarantee to furnish a better register than any other company, and at a lower price. 2. We guarantee the mechanical accuracy of our registers. 3. We guarantee one price to all. We offer $100 to any one who will buy a new, latest improved National cash register, either from any authorized agent or from the factory, for less than list price, less 5 per cent for cash. National Cash Register Company, Dayton, Ohio.'

"Against the peace and dignity of the State."

Appellant insists the information is insufficient, and cites authorities which were overruled in Mankins case, 41 Texas Criminal Reports, 662. In that case we held, among other things, that: "If the indictment or information, by a fair inspection, conveys the idea that the person has been guilty of some penal offense, or has been guilty of such conduct as is disgraceful to him as a member of society, and the natural consequence of which is to bring him into contempt among honorable persons, then it is not necessary to allege that said language in the indictment or information does charge him with a penal offense, or does bring him into disgrace as a member of society, and the natural consequence of which is to bring him into contempt among honorable persons." Under the

authority of the Mankins case, supra, we think the information in this case is good.

Appellant, by bills of exceptions numbers 1, 2, 3, and 4, complains that the court permitted the State to introduce witnesses to testify whether they had seen a copy of a certain pamphlet offered in evidence, which pamphlet is set out in the statement of facts; and whether they had any conversation with defendant, or heard him make any statement in regard to or in reference to said paper; the grounds of objection to said testimony being: "(1) Because the conversation or statement was subsequent to, and at a different time and place to, those alleged in the indictment, and proved by the witness Bolton to be the circulation or publication for which the indictment is presented. (2) Because the paper purports to have been made by another person than defendant, and is immaterial and irrelevant because of variance between it and the allegations in the indictment. (3) Because the question is not asked in regard to or as touching the paper alleged to be circulated, nor is the paper shown to witness pretended to be the paper that was circulated; but are both independent, separate, and distinct papers the one from the other. (4) Because the question, so far as it touches a proving or an effort to prove that the said paper was a copy or an exact reproduction of the paper set out in the indictment, or of the paper that was and is alleged to have been circulated, is secondary in character, and no effort had been made to obtain the original paper, nor any notice served on defendant or his attorneys to produce it or account therefor. (5) Because all said testimony that could be given in answer to the questions asked would be irrelevant and immaterial, and only serves, or could only serve, to confuse, it not being in regard to the papers alleged to have been circulated, and therefore not usable to prove the contents of the indictment." The court signs said bills referring to the statement of facts as authority for the introduction of the paper. The fact that the testimony offered was pamphlets circulated subsequent to the time appellant is charged with having violated the law does not render it any the less admissible. Without reviewing seriatim all of the above exceptions, we will say the proof shows that the paper about which the testimony was introduced was an exact copy of the paper appellant was prosecuted for circulating, or was a substantial copy of the same. A close scrutiny of the two papers, however, fails to disclose any difference between the paper which appellant is charged with circulating and the paper about which the testimony was adduced. This testimony was admissible as going to show motive, malice, purpose, and intent of appellant in circulating the paper charged in the information. His fourth ground—to the effect that it was secondary evidence, and no effort had been made to obtain the original paper, etc., is without merit, for, as stated above, the papers were identical with each other. He strenuously insists the judgment of the court is against the evidence, and is not supported thereby. As indicted above, we think the information is

sufficient. The proof sustains the information. The court has passed upon the credibility of the witness and the evidence amply sustains the finding. The judgment is affirmed.

*Affirmed.*

[Note.—Appellant's motion for rehearing was overruled without a . written opinion.—Reporter.]