Fisher Alsup v. The State.

No. 6281.   Decided December 14, 1921.

Rehearing Denied March 8, 1922.

1.—Libel—Definition of Offense—Character of Publication.

To constitute libel, it is not essential that the act or omission be charged against the injured party in direct terms. It may be expressed by

insinuation or irony. No more is required than that the statements in the publication be so plain and unmistakable in their meaning that no intelligent person can fail to understand or comprehend what is by them intended. Following Jones v. State, 38 Texas Crim. Rep., 368 and other cases.

### 2.—Same—Case Stated—Libelous Publication—Sufficiency of Evidence.

When fairly construed, the conclusion cannot be escaped that the statement, in its entirety, set out in the information conveyed the idea that the injured party had been guilty of acts which, though not penal, were disgraceful to him as a member of society, etc.; and, that if, in the efforts of the injured party to secure election to office, etc., he was guilty of the disgraceful conduct which the statement imputes to him, he was within the meaning of the statute "dishonest" and unworthy of the office.

### 3.—Same—Statutes Construed—Standard Applied—Libelous Matter—Information.

Article 1157, P. C., furnishes a measure, or standard, by which to determine whether the alleged libelous matter contained in the pleading conveys the idea that the conduct described comes within any one or more of the sub-divisions of that article, and while it is essential that this appear from the pleading, it is not required that the pleader designate to which of the sub-divisions of the statute the alleged libelous statement pertains. Following Lockhard v. State, 43 Texas Crim. Rep., 61. Qualifying, McKie v. State, 37 Texas Crim. Rep., 544.

### 4.—Same—Venue—Case Stated—Newspaper—Intent to Circulate—Candidate for Office.

Where upon trial of libel, the defendant testified that he wrote the article intending it to be used in influencing the voters against the party injured, who was the democratic nominee for governor; that he handed it to the publishers of a certain newspaper for publication; that he knew that this paper had a broad circulation in Texas, and knew that copies of it would be distributed; he cannot claim as a defense, and as an objection to the venue, that there was no specific testimony that defendant knew that the paper containing these statements would be circulated in the county of the prosecution, where the evidence charged it was circulated.

### 5.—Same—Charge of Court—Requested Charge—Truth of Publication—Good Faith.

Where the court instructed the jury that if they believed the statement to be true with reference to the candidate for office, an acquittal must follow, but further instructed them in a requested charge by the State that belief on the part of the defendant in their truth would not suffice to excuse him, there was no reversible error, as the good faith of the author and publisher will not give him immunity if the facts are not true, but can only mitigate the penalty. Following McArthur v. State, 41 Texas Crim. Rep., 639, and other cases.

### 6.—Same—Verdict—Practice in Trial Court—Sufficiency of Evidence—Rehearing.

Where the information contained two counts, one charging libel of the party injured as an individual, and the other charging libel of him as a candidate for governor, no election between said counts having been made, and both having been submitted to the jury and a general verdict of guilty rendered, and there was no question of the sufficiency of the evidence to show guilt under the first count, the conviction must be sustained; however, there is also sufficient evidence to sustain the second count.
91 Tex. Crim.—15

7.—Same—Statutes Construed—Words and Phrases—Dishonesty—Public Official.

The word "dishonest" as used in Sub-division 5, article 1157, Penal Code, is not confined to financial transactions, as the only one of the qualifications to be expected from a public servant, and in view of the fact that there are many public offices in which the handling of public money forms but a minor portion of the duties thereof. The Legislature intended to use the word in a much larger and broader sense, and not in the restricted construction heretofore given. Overruling Squires v. State, 39 Texas Crim. Rep., 96.

Appeal from the County Court of McLennan. Tried below before the Honorable Giles P. Lester.

Appeal from a conviction of libel; penalty, a fine of $2000.

The opinion states the case.

*Dewitt Bowmer,* and *A. L. Curtis,* for appellant.—Cited Nordhouse v. State, 40 S. W. Rep., 804; Byrd v. State, 44 id., 521; Aldama v. State, 163 S. W. Rep., 731; Shaw v. State, 12 id., 741; Mankin v. State, 57 id., 950; Johnson v. State, 21 id., 541; State v. Bushe, 122 Indiana, 42; and cases cited in opinion.

*R. H. Hamilton,* Assistant Attorney General, for the State. Cited cases in opinion.

MORROW, Presiding Judge.—Appellant was convicted of libel. From the alleged libelous statement, the following is quoted:

"In the recent democratic campaign Mr. Bailey introduced public records showing that Pat M. Neff was born in 1872. In reply Neff denounced Mr. Bailey as a liar and a falsifier and claimed that he was born in 1871. To support his assertion the family Bible of his father Noah Neff was produced, giving the names and birth of all the brothers and sisters of Pat M. Neff.

"The last entry in said Bible read:

" 'Patty Morris Neff was born Nov. 26th, 1871.'

"So far as my information goes, I have never heard that Pat M. Neff has ever specifically claimed that this entry in the Bible was made for his birth date. Nor have I ever heard that he claimed that his original name was Patty. Nor has Pat Neff ever anywhere spelled his name with two t's (Patt). He swore in his application for place on the ballot that it was Pat, and it now so appears on the ticket.

"During the campaign the page in the Bible was photographed in Waco and later was photographed in Dallas and I have copies of both photographs in my possession. The first photograph plainly showed the name to be 'Patty.' The second photograph showed the letter 'y' erased and the Bible now reads Patt Morris Neff."

Here follows the reproduction of the photograph copy:

"Having recently been informed that the said Patty Morris Neff was born Nov. 26th, 1871, and was a sister of Pat M. Neff, and had

died when about a year old, and that her grave was marked by a tombstone in the Post Oak graveyard, situated about three miles south of Oglesby, in Coryell County, Texas, for my own satisfaction, and for the purpose of getting all the facts of a controversy which had been the subject of so much discussion in the campaign, I, in company with a friend, went to said Post Oak graveyard.

There I found nine graves of the Neff famliy on one lot, all marked by tombstones and inscriptions on same, except one, which did not have the tombstone, but there remained a limestone foundation for the missing tombstone. I examined carefully said foundation. It is limestone block about 16 inches square and about 10 inches thick (deep). In the top surface is cut a trench or groove, some 2 inches wide and 12 inches long in which to fit the marble slab or tombstone.

Three of the graves in the same row, two South and one North of it had similar foundations, in the grooves of which were small upright marble slabs bearing marks as indicated by the diagram printed below. While the grave farthest North is marked by a marble stone of different form. All appearances indicated that the stone had been recently removed. A large branch of sedge grass about two feet high and in bloom which stood near the head of the grave had been stepped on and pressed so firmly that all the stems were bent or broken just at the top of the ground, and it lay still green, full length along the earth. Also the violent jerk or pull that lifted the slab out of the groove moved the foundation an inch or so to the east, leaving exposed the bare ground while the grass grew close and even partially covered the foundations. It was obvious that the feet of the person was firmly pressing on the large bunch of sedge grass and broke it down while tugging at the slab.''

Here follows diagram of burial plot, showing graves; also one with the missing headstone.

''By checking the tombstones against the Bible records we find that all the Neff children are buried in this graveyard with the exception of Benjamin Neff, who is buried at McGregor, Texas, (and I have seen his tomb there), and Sallie Jane and Samuel Herbert Neff, who are yet living.

'' 'The question then arises: 'From whose was the tombstone taken?

'' 'If said missing tombstone did not bear the inscription of something like Patty, then what was on it?'

'' 'If said tombstone did not bear something like Patty, then why was it necessary to erase the 'y' fror the family Bible between Waco and Dallas?'

'' 'Why would anybody want to remove said tombstone if it did not have on it Patty or something like it?'

'' 'If the missing tombstone was for some other child of the Neff family, then what was its name and why was it not entered in the family Bible?'

" 'If the missing tombstone was not for one of the Neff children, then why was the grave put in the center of the graves of the Neff children?'

'Mr. Voter, as I am a candidate for Superintendent of Public Instruction, on the American Party Ticket, I will not make any charges or argument, but will leave you to answer these questions for yourself. I simply give you the facts as I found them, and as anybody else can find them on the ground. After I had visited the graveyard, I immediately sought out one of the citizens of the community, and had him go with me and I pointed out to him the conditions as I have described them and called his attention to the missing tombstone.' "

Libel is defined as follows: "He is guilty of 'libel' who, with intent to injure, makes, writes, prints, publishes, sells or circulates any malicious statement affecting the reputation of another in respect to any matter or thing pointed out in this chapter."

Omitting Items 1, 3 and 4, which are without bearing on this case, Article 1157 of the Penal Code reads thus: "The written, printed or published statement, to come within the definition of libel, must convey the idea either—2. That he has been guilty of some act or omission which, though not a penal offense, is disgraceful to him as a member of society, and the natural consequence of which is to bring him into contempt among honorable persons; or 5. That any person in office, or a candidate therefor, is dishonest, and therefore unworthy of such office, or that while in office he has been guilty of some malfeasance rendering him unworthy of the place."

The court overruled the motion to quash the information and submitted the case to the jury on the theory that they might be authorized to find that the language conveyed the idea that the conduct imputed to Pat M. Neff had been disgraceful, though not penal, and that its natural consequence would be to bring him into contempt among honorable persons, and that he was dishonest and therefore unworthy of the office which he was seeking. It also held that the evidence sustained the charge contained in the information.

This appeal calls in question the correctness of these rulings of the court. The evidence is sufficient to support the finding of the jury that Pat M. Neff, in paying his poll-tax, had signed a statement going to show that 1872 was the year of his birth; and that a roster of the members of the legislature gave like information; that if this was the correct date, it would have been incumbent upon him to register for draft in the United States Army; that this was not done by him; that in the political campaign use of these matters was made against him; that on the issue thus arising before the public, the register of births in the family Bible and the testimony of members of his family, including his mother, fixed the date of his birth at 1871; that he explained that before the controversy arose he labored under a mistake of fact as to the year of his birth. The family Bible showed the date of birth of a number of brothers and sisters and also bore

the inscription: "Patty Morris Neff, born November 26, 1871;" that in his youth and infancy he was called "Patty." The evidence also supports the finding that the date of his birth was November, 1871; that the entry in the Bible was intended for his name; that he had no sister born at that time bearing that name; that all the graves of the deceased members of the Neff family had headstones marking their graves; that none of these had been removed; that the written statements set out in the information were signed by the appellant and by him delivered to the publishers of the "Ferguson Forum," a newspaper published in Temple, in Bell County, Texas, having a circulation throughout the state, including McLennan County; that there was no mutilation of the inscription.

It was conceded that there was a discrepancy between the date of Pat M. Neff's birth, as given in his poll-tax affidavit, and in the entry in the family Bible; that he had failed to register for draft service; and that these matters became the subject of adverse comment in the political campaign. The appellant testified that these facts were true; and testified that at the time the document was written nad published, he believed all of the statements of facts contained in the document were true; that he, in fact, had seen newspaper reproductions of photographs of the entry in the Bible showing the discrepancy in spelling; that he had examined the cemetery and stated the facts as he saw them and as they were set out and that his statements concerning information received by him were true. From his testimony, we understand that at the time of the publication, he regarded the facts which were then in his possession and which were disclosed in th article were such as rendered Pat M. Neff unworthy to hold the office which he was seeking; and that he felt it his patriotic duty to make known to the public the facts which were in his possession bearing upon the issue. The statement conveys the idea that, in his race for governor, his veracity was attacked by the exhibition of a sworn document to the effect that he was born in 1872. He denounced this as false, claiming that he was born in 1871. It conveys the idea that, in support of his attack upon the veracity of his opponent, he produced the family Bible wherein were recorded the names of the children born to his father and mother; that his name was not in the Bible when produced but that his sister was shown thereby to have been born on the date in 1871 which he claimed for his own; that this entry, while in his possession, was changed so as to falsely show that it recorded the date of his birth in 1871; that to avoid the refutation of his false position touching his age, he had been instrumental in desecrating the grave of his sister and surreptitiously removing her tombstone so that it would not reveal the truth.

To constitute libel, it is not essential that the act or omission be charged against the injured party in direct terms. It may be expressed by insinuation or irony. Wharton's Crim. Law, Vol. 3, Sec. 1915; also Sec. 1925; Jones v. State, 38 Texas Crim. Rep. 367; Man-

kins v. State, 41 Texas Crim. Rep. 662; Lockhard v. State, 43 Texas Crim. Rep. 64; Squires v. State, 39 Texas Crim. Rep. 102. No more is required than that the statements in the publication be so plain and unmistakable in their meaning that no intelligent person can fail to understand or comprehend what is by them intended. Jones v. State, 38 Texas Crim. Rep. 368; Morgan v. Livingston, 2nd Rich. Law, S. C., 573; Commonwealth v. Blanding, 15 Amer. Dec. 214; Kruse v. Rabe, 33 L. R. A., (N. S.) 469; Ann. Cases, 1912a, p. 477.

We think that, fairly construed, the conclusion cannot be escaped that the statement, in its entirety, set out in the information conveyed the idea that Pat M. Neff had been guilty of acts which, though not penal, were disgraceful to him as a member of society, and that the natural consequence thereof was to bring him into contempt among honorable persons. We think also that, if in his efforts to secure election to office and to acquire the honors and emoluments thereof, he was guilty of the disgraceful conduct which the statement imputes to him, the fraud and falsehood implied and the despicable means of preventing the discovery of the truth, he was, within the meaning of the statute, "dishonest" and unworthy of the office. This court, in the case of Squires v. State, 39 Texas Crim. Rep. 102, drew a distinction between the kind of conduct of a candidate for office which would be disgraceful and bring him into contempt within the meaning of the statute and that which would characterize him as "dishonest" and unworthy of office. From the case we quote:

"The indictment shows that, if said circular was true, he was acting the part of a hypocrite and a traitor; and certainly, in our opinion, if guilty of such conduct, it was calculated to bring him into disgrace and reproach among gentlemen, and should justly subject him to the contempt of all honorable persons."

The conduct there considered was that in which the candidate, being a nominee of one party, secretly sought the support of another, and, as said in the opinion, thus treacherously seeking support in his election. This case is referred to by appellant as an impediment to sustaining the conviction, and as applied to the second count, it cannot be denied that it tends to that result. We have been unable to reach a conclusion entirely in accord with the definition of "dishonesty" as given in that case. After discussing the question, the conclusion is stated thus: "It (dishonesty) means such want of honesty as would go to his personal integrity, and would render him unfit to be trusted with official duties." We are inclined to the view that such definition is too restrictive. " 'Dishonesty' denotes an absence of integrity; a disposition to cheat, deceive, or defraud; deceive and betray." (Century Dictionary.) Unworthy means "unbecoming," "discreditable," "not having suitable qualities or value," "beneath the character of." (Century Dictionary.) So our statute might be said that the alleged libelous statement must convey the idea that a candidate has done acts which he intended to cheat, de-

ceive and defraud, and therefore that he has not suitable qualities for, and is beneath the character of one who should hold the office which he seeks. We think the use of the word "dishonest" in the statute was not used in a narrow or restricted sense. In other parts of the statute, acts that are penal, vicious or infamous are referred to. The idea that one who seeks office in the state may be charged with falsehood for an ignoble purpose and with disgraceful acts to cover his falsehood, without conveying the idea that he is dishonest in the sense that he is unworthy of office, finds no sanction in the statute.

Article 1157, supra, furnishes a measure or standard by which to determine whether the alleged libelous matter contained in the plead-conveys the idea that the conduct described comes within any one or more of the subdivisions of that article. It is essential that this appear from the pleading, that is, from reading the matter set out but it is not required that the pleader designate to which of the subdivisions of the statute the alleged libelous statement pertains. A contrary view was formerly expressed in McKie v. State, 37 Texas Crim. Rep. 544 and other cases, but was later abandoned in Mankins' case, 41 Texas Crim. Rep. 662, and Lockhard's case, 43 Texas Crim. Rep. 61. When it is intended to charge that a candidate or officer is dishonest, the pleading should contain an averment to the effect that the party injured was an officer or candidate, as the case may be. Such an averment is found in the second count of the information.

The appellant testified that he wrote the article intending it to be used in influencing the voters against Pat M. Neff, the democratic nominee for governor; that he handed it to the publishers of the "Ferguson Forum" for publication; that he knew that the Forum had a broad circulation in Texas and knew that copies of it would be distributed. It appeared in the evidence that the issue of the "Ferguson Forum" in which the article was published, was circulated in McLennan County. Appellant's contention that the venue was not proved, we think, is not sustained. His avowed object in writing the article and giving it to the publisher was to convey to the voters who read the paper the alleged facts contained in the written statement. The contention is based upon the ground that there was no specific testimony that appellant knew that the paper containing the statement would be circulated in McLennan County. His purpose was to influence the voters of the state against Pat Neff. He selected the newspaper in question as a medium to effect this purpose. He knew its circulation extended throughout the state. We deem the evidence sufficient to support the finding of the jury that the statement was published in McLennan County with his consent and through his efforts. See Wharton's Crim. Law, Vol. 3, Sec. 1947; Ruling Case Law, Vol. 17, p. 464; sec. 227; Commonwealth v. Blanding, 15 Amer. Dec. 214; State v. Huston, 9 Amer. & Eng. Ann. Cases, 382 and note; Penal Code, Art. 1164.

The court instructed the jury that if they believed it to be true, an acquittal must follow, but further instructed them in a special

charge that belief on the part of the appellant in their truth would not suffice to excuse him. This special insruction is made the subject of complaint.

"It is no offense to make true statements of fact or express opinions as to the integrity of a candidate for office." (Penal Code, Article 1165.)

"In other cases than those enumerated the truth of facts stated in which the truth of the alleged libelous matter may be urged as a defense. In one of these, it is said:

"Where the publication charges a candidate for office with want of honesty, rendering his unworthy of the place, the truth may be proved as a defense."

The statute also says:

"In other cases than those enumerated the truth of facts stated in the libel cannot be inquired into."

The evil design, which is an essential element of criminal libel, requires no specific proof but may be inferred by the jury from the published matter. Penal Code, Articles 1175 and 1178; Colos v. Thompson, 27 S. W. Rep. 47; Bradstreet v. Gill, 72 Texas Reports, 121; Holt v. Parsons, 23 Texas, 9, 76 Amer. Dec. 49. As relating to the first count in the indictment, the truth of the matter constituted no defense, and obviously belief in its truth would not do so. Penal Code, Art. 1177; Wharton's Crim. Law Sec. 1971 and Sec. 1975. If, however, a candidate for office is dishonest and therefore unworthy of the office he seeks, the law permits this to be made known to the end that his election may be prevented. Such publication is not prohibited provided it be true. We think, however, that the good faith of the author and publisher will not give him immunity if the facts are not true. His belief in their truth might mitigate the penalty but it would not bar the conviction. Cyc. of Law & Proc., Vol. 25, p. 417, sec. 323 on the subject of Libel; McArthur v. State, 41 Texas Crim. Rep. 639; Wolff v. Smith, 112 Mich. 360. The analogous principle, we think, is stated in Brewer v. Chase, 46 L. R. A. 379, in the following language:

"The substance of the charge is that the acts were committed, and the author cannot shelter himself by showing that he only said what he heard. The authorities are harmonious that such statements are merely repetitions of the charge, and none the less so because the statement was that another had made such charge. In Newell, Slander & Libel, p. 350, it is said that 'every repetition of a slander originated by a third person is a wilful publication of it, rendering the person repeating it liable to an action.' 'Talebearers are as bad as talemakers.' And it is no defense that the speaker did not originate the scandal, but heard it from another, even though it was a current rumor, and he in good faith believed it to be true."

We find nothing in the record which warrants a reversal of the judgment, and it is therefore affirmed

                                                            *Affirmed.*

March 8, 1922.

LATTIMORE, JUDGE.—The information herein contains two counts, one charging libel of Pat M. Neff as an individual, and the other charging libel of him as a candidate for Governor. No election between said counts was had and the law of both was submitted, and a general verdict of guilty was returned. There would seem to be no question of the sufficiency of the evidence to show guilt under the first count, under any authority known to us, but appellant contends in his motion for rehearing that our opinion relative to what is meant by the use of the word "dishonest" in subdivision 5, Art. 1157, Vernon's P. C., wherein is contained the definition of libel, is unsound and in conflict with a prior decision of this court in Squires v. State, 39 Texas Crim. Rep. 96. An examination of our opinion discloses that we did not base our disposition of this case alone on the conclusion that the alleged libelous matter related to Governor Neff in his character as a candidate for office, but that it discussed that feature of the charge, and did uphold the jury's verdict even if based on same as well as if based on that portion of the law of libel relating to the bringing into contempt honorable persons and being disgraceful to one as a member of society, which pertain to the other portions of said Article 1157. Subdivision 5 of said article is quoted in our opinion and is here referred to. In view of appellant's insistence that the word "dishonest" as therein used should be given the restricted construction seemingly placed thereon in the Squires case, we have again considered the matter. Said subdivisions 5 seems to relate to and define that which is libelous when spoken of a candidate for office. Honesty is financial transactions is only one of the qualifications to be expected from a public servant, and in view of the fact that there are many public offices in which the handling of public money forms but a minor portion of the duties thereof, it would hardly seem to us likely that the intention of our law-makers would have been to permit all kinds of false utterances against candidates to go unpunished as libelous, save when same related to some question of financial honesty. In our view the Legislature intended to use the word under discussion in a much larger and broader sense. We quote in our original opinion definitions thereof relating to other traits of character and other seeming qualifications for office than mere financial honesty, and believe that publications relating to candidates which may be shown to be false and which can fairly be brought within the larger definitions referred to in said opinion, should be held libelous. It may be true that one who offers for public office should be expected to be maligned and should be willing to be made a target for all sorts of false charges save the single one, that he is financially dishonest; and it may be that the intention of the Legislature was to give to the opponents of a candidate for office

the privilege of bringing any false charge against such candidate save the single one of financial dishonesty, but it does. not seem so to us. The learned judge who wrote the opinion in the Squires case did not cite any authorities in support of his position, and we have been unable to find any. The insertion of subdivision 5 in the libel laws of this State seems to be the selection of a praticular matter as libelous, which we have been unable to find in other libel laws. The exact question has not been raised in any case since the decision in the Squires case, and this court has not been called upon to express itself either as affirming or opposing the seemingly restricted construction based on the word in that opinion. In our view said case should be overruled in so far as it expresses a contrary view to that now announced by the court.

Finding no error in the original opinion, and believing the case was correctly decided, the motion for rehearing will be overruled.

*Overruled.*