EMANUEL COUTLAKIS V. STATE

No. 26,860. March 24, 1954
Rehearing Denied May 12, 1954
Appellant's Second Motion for Rehearing Denied
(Without Written Opinion) June 9, 1954

250

*Morris Bogdanow*, Houston, for appellant.

*Austin F. Anderson*, Criminal District Attorney, *Richard J. Woods*, Assistant Criminal District Attorney, San Antonio, and *Wesley Dice*, State's Attorney, Austin, for the state.

WOODLEY, Judge.

The conviction is for violation of Sec. 5 of Art. 5154(a) V.A.C.S., which reads as follows:

"All labor union organizers operating in the State of Texas shall be required to file with the Secretary of State, before soliciting any members for his organization, a written request by United States mail, or shall apply in person for an organizer's card, stating (a) his name in full; (b) his labor union affiliations, if any; (c) describing his credentials and attaching thereto a copy thereof, which application shall be signed by him. Upon such applications being filed, the Secretary of State shall issue to the applicant a card on which shall appear the following: (1) the applicant's name; (2) his union affiliation; (3) a space for his personal signature; (4) a designation, 'labor organizer'; and (5) the signature of the Secretary of State, dated

and attested by his seal of office. Such organizer shall at all times, when soliciting members, carry such card, and shall exhibit the same when requested to do so by a person being so solicited for membership."

A fine of $500 was assessed as punishment.

It is contended that the above quoted Sec. 5 of Art. 5154(a) V.A.C.S. is in conflict with the National Labor Relations Act and is therefore inoperative.

This question was before the courts in Thomas v. Collins, 323 U.S. 516, 89 L.Ed. 430, by certiorari from the Supreme Court of Texas, whose opinion is reported in 174 S.W. 2d 958 (Ex parte Thomas).

In Ex parte Thomas, 141 Texas, 591, 174 S.W. 2d 958, 960, 961, the Supreme Court of Texas said:

"The right of the State under its inherent police power to regulate labor unions in order to protect the public welfare appears to be almost beyond question.***

"A careful reading of the section of the law here under consideration will disclose that it does not interfere with the right of the individual lay members of unions to solicit others to join their organization. It does not affect them at all. It applies only to those organizers who for a pecuniary or financial consideration solicit such membership. It affects only the right of one to engage in the business as a paid organizer, and not the mere right of an individual to express his views on the merits of the union. Furthermore, it will be noted that the Act does not require a paid organizer to secure a license, but merely requires him to register and identify himself and the union for which he proposes to operate before being permitted to solicit members for such union. The Act confers no unbridled discretion on the Secretary of State to grant or withhold a registration card at his will, but makes it his mandatory duty to accept the registration and issue the card to all who come within the provisions of the Act upon their good-faith compliance therewith.

"That the Legislature was justified in concluding that that part of the Act here under consideration was necessary for the protection of the general welfare of the public, and particularly the laboring class, can hardly be doubted."

In Thomas v. Collins, 323 U.S. 516, the contempt conviction for violation of the injunction, upheld by the Supreme Court of Texas in Ex parte Thomas, was reversed, the majority holding that the statute (Art. 5154(a) "as it was applied in this case imposed previous restraint upon appellant's rights of free speech and free assembly . . ." The facts were that Thomas addressed a mass meeting of workers, for which purpose he came to Texas, and at the end of his speech asked persons present to join the union.

It was urged, as here, that the application of the statute was inconsistent with the National Labor Relations Act. In this connection the majority opinion of the Supreme Court of U.S. said:

"That the State has power to regulate labor unions with a view to protecting the public interest is, as the Texas court said, hardly to be doubted. They cannot claim special immunity from regulation. Such regulation however, whether aimed at fraud or other abuses, must not trespass upon the domains set apart for free speech and free assembly***

"*** Upon the re-argument attention was given particularly to the questions whether and to what extent the prohibitions of Sec. 5, or their application in this case, are consistent with the provisions of the National Labor Relations Act. Both the parties and the Government, which has appeared as amicus curiae, have advanced contentions on this issue independent of those put forward upon the question of constitutionality. Since a majority of the Court do not agree that Sec. 5 or its present application conflicts with the National Labor Relations Act, our decision rests exclusively upon the grounds we have stated for finding that the statute as applied contravenes the Constitution."

Justice Douglas wrote a concurring opinion and removed any doubt that a majority of the court agreed only that the contempt judgment should be reversed because the injunction was an effort to forestall Thomas from speaking at all, the contempt being based, at least in part, on the fact that he did make a public speech.

Appellant relies upon Hill v. Florida, 325 U.S. 538, 89 L.Ed. 1782, wherein the Supreme Court of the United States held two sections of a Florida statute regulating labor union activities to be repugnant to the National Labor Relations Act.

Hill was enjoined from further acting as the union's business agent until he obtained a state license under Sec. 4 of the Florida statute, which provided that no one shall be licensed as a "business agent" of a labor union who has not been a citizen of the United States for more than ten years, who has been convicted of a felony or who is not a person of good moral character. The statute provided for a $100 fee to accompany the application for such license, and for a 30 day period to permit the filing of objections, the application to then be passed on by a board created for the purpose. Also the statute required annual license and reports.

The Supreme Court of U.S. said of those provisions of the Florida statute:

"To the extent that Sec. 4 limits a union's choice of such an 'agent' or bargaining representative, it substitutes Florida's judgment for the workers' judgment."

. . . . .

"The collective bargaining which Congress has authorized contemplates two parties free to bargain, and cannot thus be frustrated by state legislature. We hold that Sec. 4 of the Florida Act is repugnant to the National Labor Relations Act."

The injunction sought against the union was that it had operated without obtaining a state license as required by Sec. 6 of the Florida Statute.

The Court in holding that this statute infringed the Labor Relations Act, said:

"Section 6, as here applied, stands no better. The requirement as to the filing of information and the payment of a $1.00 annual fee does not, in and of itself, conflict with the Federal Act. But for failure to comply, this union has been enjoined from functioning as a labor union. It could not without violating the injunction and also subjecting itself to the possibility of criminal punishment even attempt to bargain to settle a controversy or a strike. It is the sanction here imposed, and not the duty to report, which brings about a situation inconsistent with the federally protected process of collective bargaining. . . . . This is true because if the union or its representatives acted as bargaining agents without making the required reports presumably they would be liable both to punishment for contempt

of court and to conviction under the misdemeanor section of the act. Such an obstacle to collective bargaining cannot be created consistently with the Federal Act.

"Nor can it be argued that our decision in Thomas v. Collins, 323 U.S. 516, ante, 430, 65 S Ct 315, forecloses such result. In that case we did not have, as here, to deal with such a direct impediment to the free exercise of the federally established right to collective bargaining.

"Our holding is that the National Labor Relations Act and Secs. 4 and 6 of the Florida Act as here applied cannot 'move freely within the orbit of their respective purposes without infringing upon one another.' "

As we understand the foregoing decisions of the Supreme Court of the United States, the contention here raised was overruled in Thomas v. Collins, supra. In Hill v. Florida the distinction between the Texas and Florida statutes was recognized. The Florida Statute as applied was found to create an obstacle to collective bargaining inconsistent with the National Labor Relations Act. No such obstacle or "frustration" appears here. We cannot agree that Hill v. Florida overruled the holding in Thomas v. Collins, or that it is authority for striking down Sec. 5 of Art. 5154(a) V.A.C.S. as repugnant to the National Labor Relations Act.

On the other hand we consider the cases cited as authority for our holding that Art. 5154(a) and its application here does not conflict with the National Labor Relations Act and did not deprive appellant of his constitutional right of freedom of speech as guaranteed under the First Amendment of the Constitution of the United States, and under Art. 1, Sec. 8 of the Constitution of Texas. See also A.F. of L. v. Mann, 188 S.W. 2d 276.

The information alleged, among other things, that appellant was a "labor organizer employed by the International Fur & Leather Worker's Union of the United States and Canada, to solicit members for said union" and that he did solicit Joe Mata to become a member of said union without having been issued an organizer's card by the secretary of state.

We overrule the contention that the information was vague and indefinite for failure to specify the statute under which it was drawn. See 23 Texas Jur. 634, 635, Sec. 33; Alsup v. State, 91 Texas Cr. Rep. 224, 238 S.W. 667; De Santiego v. State,

146 Texas Cr. Rep. 394, 176 S.W. 2d 175; Arts. 405 and 411 V.A.C.C.P.; Ehrke v. State, 134 Texas Cr. Rep. 222, 115 S.W. 2d 631.

Also we are unable to agree that the statute is void for uncertainty because it contains no definition of the word "solicit."

It was shown that appellant, without applying for or securing a labor organizer's card from the secretary of state, approached Joe Mata and on several occasions requested that he join such union and delivered to him an application card for that purpose.

Appellant testified that he came from North Carolina to San Antonio as an employee of said union, arriving October 27. He admitted having several conversations with Joe Mata regarding the organizing of a local among the workers of the Nelson Tanning Plant but contended that he did not solicit Mata to join his union but wanted to get him to assist in establishing a local. "It was more of a survey. I wasn't really asking about joining the union. Didn't have one to join. I mean I first had to find out those things, and Mata was just one of the people I had to see."

Appellant contends that it was essential for the state to allege and prove that appellant was a "paid" employee of a labor union and that the state failed to offer such proof.

A "Labor Organizer" is defined in Art. 5154(a) to be "a person who for a pecuniary or financial consideration solicits memberships for a labor union."

Having alleged that appellant was a "labor organizer" it was not necessary that the complaint and information also allege that appellant solicited memberships for a pecuniary or financial consideration.

As to the proof, as stated, appellant testified to his being employed by the union named. He also testified that he opened a bank account with his first week's pay, and the duplicate deposit slip was introduced in evidence.

We find this evidence sufficient to establish that appellant received a financial or pecuniary consideration for his labor organizing work.

The remaining contentions of error have been considered and are overruled.

The evidence is ·deemed sufficient to sustain the jury verdict and we find no reversible error.

The judgment is affirmed.

MORRISON, Judge (dissenting).

It is natural inclination of state courts of last resort to uphold the legality of the acts of their legislatures, primarily because the members thereof are ardent propondents of the rights of the states. However, by the same token as we require inferior courts to accede to our views of the law, we should be ready to accept the holdings of the court to which our cases may be appealed. An accused should not be required to appeal to a superior court when that superior court has already spoken.

I say that our superior court has spoken and refer to the portion of the opinion in Hill v. Florida quoted in the majority opinion wherein the court discusses Section 6 of the Florida act.

Said section requires a labor organization operating in Florida to annually pay one dollar and report to the secretary of state of that state the following information, and nothing more:

1. The name of the organization.

2. The location of its office, and

3. The names and addresses of its officers.

The Texas act requires a labor union organizer before soliciting members for his organization to mail or present to the secretary of state an application showing:

1. His name,

2. His union affiliations, and

3. A description of his credentials.

In discussing Section 6 of the Florida act, the court said, "It is the sanction here imposed, and not the duty to report,

which brings about a situation inconsistent with the federally protected process of collective bargaining."

The word "sanction" has been judicially defined as "means of enforcement." See M.K. & T. Ry. Co. of Texas v. Huff, 81 S.W. 525, opinion by Chief Justice Gaines.

The court then continues with this statement, "This is true because if the union or its representatives acted as bargaining agents without making the required reports, presumably they would be liable for contempt of court and to conviction under the misdemeanor section of the act. Such an obstacle to collective bargaining cannot be created consistently with the Federal Act."

In the case before us one of the contingencies which the Supreme Court said presumably could happen has occurred, and the holding of my brethren is in direct conflict with the decision in Hill v. Florida.

As I view the recent holding of the Supreme Court in Garner v. Teamsters C. & H. Union, 98 L. Ed. (Adv. p———). there can be no question but that the Federal Act will be held to have preempted the field covered by Section 5 of Article 515a.

I respectfully enter my dissent.

ON MOTION FOR REHEARING

GRAVES, Presiding Judge.

Appellant renews his complaint relative to the majority opinion in this case and reiterates the contention that the National Labor Relations Board, under the Taft-Hartley Act, has preempted the field herein with reference to the labor organizers' method of procedure within the different states, and that the state's statutes here under consideration would be an obstacle or "frustration" to the rights of collective bargaining as controlled by the Federal statutes.

We repeat our statement of the majority opinion that we do not think the case of Garner v. Teamster's Union, 346 U.S. 485, would affect the proposition herein present that a labor organizer must obtain a card from the secretary of state under Article 5154(a) of the Revised Civil Statutes of Texas.

It is also insisted that the opinion herein erred in its holding that the term "solicit" should not have been defined more

clearly in the statute; and it is suggested that there can be no solicitation unless the same of necessity entails the passage of money from the person solicited to the so-called organizer doing the soliciting. The word "solicit" is one of common usage and its meaning is simple and not subject to any peculiar usage. As here used, it means "to entice, to request, to incite" and surely it does not contain the further proposition that it should be a successful solicitation evidenced by the passage of money from one person to another. We do not think this word is vague, indefinite or uncertain, but its import is a matter understood by people who understand the meaning of the language. See Words & Phrases, Permanent Edition, Volume 39, page 615.

Our opinion is also criticized because of the fact that it was not shown that appellant was a paid employee of a labor union. The opinion clearly sets out the fact that appellant received funds from this union as his first pay check. Unquestionably appellant had a right of free speech, but a free speech must be a proper speech and can be governed by the statutes as is shown by the enactments prohibiting the use of certain language, the abuse of which can be punished under the Penal Code.

Believing the proper disposition of the case to have been made in the original opinion, the motion for rehearing will therefore be overruled.