**EX PARTE** Warren Kenneth **PAXTON Jr.**

No. 05–16–00004–CR, No. 05–16–00005–CR, No. 05–16–00006–CR

Court of Appeals of Texas, Dallas.

Opinion Filed June 1, 2016

Rehearing En Banc Overruled June 30, 2016

Discretionary Review Stricken August 31, 2016

Heather J. Barbieri, Plano, TX, J. Mitchell Little, Frisco, TX, William B. Mateja, Dallas, TX, Terri Hammond Moore, Ft. Worth, TX, Dan Lamar Cogdell, Philip H. Hilder, Stephanie K. McGuire, Q. Tate Williams, Paul Creech, Houston, TX, for appellants.

Brian W. Wice, Kent A. Schaffer, Nicole W. DeBorde, Houston, TX, for appellees.

## OPINION

Opinion by Chief Justice Wright

The question before us in this accelerated appeal is whether the trial court properly denied Warren Kenneth Paxton, Jr. the relief sought in his applications for writ of habeas corpus challenging the State's ability to prosecute him.[2] We conclude three of appellant's claims are not cognizable by pretrial writ of habeas corpus and the fourth does not entitle him to relief. Consequently, we affirm the trial court's orders denying the relief sought by appellant.

### Background

The Collin County Grand Jury returned three felony indictments against appellant. One indictment charged appellant with acting as an "investment advisor representative" without being registered with the Texas Securities Board; and the other two indictments alleged appellant committed securities fraud. Appellant challenged the three indictments in four applications for pretrial writs of habeas corpus. Specifically, appellant argued (1) he could not be

---

**2.** An appeal in a habeas corpus will be heard at the earliest practicable time. *See* Tex.R.App. P. 31.2.

charged under the Texas Securities Act because he was not required to register under the act; (2) he could not be charged under the Texas Securities Act for failing to register as an investment advisor representative because there is no valid definition of investment adviser representative, rendering article 581–29(I) of the Texas Securities Act unconstitutionally vague; (3) all three indictments are void because the grand jury that returned the indictments was illegally constituted; and (4) article 581–29(I) is facially unconstitutional because it is overbroad and vague. After a hearing, the trial court denied appellant's applications. In four issues on appeal, appellant challenges each of the trial court's determinations.

## Pretrial Habeas

 Pretrial habeas, followed by an interlocutory appeal, is an extraordinary remedy. *Ex parte Perry*, 483 S.W.3d 884, 895 (Tex.Crim.App.2016). This remedy is reserved for situations in which the protection of the applicant's substantive rights or the conservation of judicial resources would be better served by interlocutory review. *Id.* Neither trial courts nor appellate courts should entertain an application for writ of habeas corpus when there is an adequate remedy by appeal. *Ex parte Weise*, 55 S.W.3d 617, 619 (Tex. Crim.App.2001). Whether a claim is cognizable on pretrial habeas is a threshold issue that should be addressed before the merits of the claim may be resolved. *Ex parte Ellis*, 309 S.W.3d 71, 79 (Tex.2010); *see Perry*, 483 S.W.3d at 895 (addressing cognizability of as-applied challenge). When determining whether an issue is cognizable by pretrial habeas, we consider a variety of factors, including whether the rights underlying the claims would be effectively undermined if not vindicated before trial and whether the alleged defect would bring into question the trial court's

power to proceed. *Perry*, 483 S.W.3d at 895–96; *Weise*, 55 S.W.3d at 619. A defendant may use a pretrial writ of habeas corpus only in very limited circumstances. *Ex parte Smith*, 178 S.W.3d 797, 801 (Tex. Crim.App.2005). The accused may challenge the (1) State's power to restrain him at all, *i.e.*, the existence of probable cause, (2) the manner of his restraint, *i.e.*, the denial of bail or conditions attached to bail, and (3) certain issues that would bar prosecution or conviction. *Id.* Designating a particular complaint as one that is cognizable is not enough; if the complaint is in fact one that is not cognizable, we should refuse to consider the merits of the claim. *See Ellis*, 309 S.W.3d at 79–80.

When reviewing the trial court's decision to grant or deny habeas corpus relief, we view the facts in the light most favorable to the trial court's ruling. *Ex parte Wilson*, 171 S.W.3d 925, 928 (Tex. App—Dallas 2005, no pet.). We will uphold the trial court's ruling absent an abuse of discretion. *Id.* In conducting our review, we afford almost total deference to the trial court's determination of the historical facts that are supported by the record, especially when the fact findings are based on an evaluation of credibility and demeanor. *Id.* We afford the same amount of deference to the trial court's application of the law to the facts if the resolution of the ultimate question turns on an evaluation of credibility and demeanor. *Id.* If the resolution of the ultimate question turns on an application of legal standards, we review the determination de novo. *Id.*

## Grand Jury

 In his third issue, appellant contends the trial court erred by denying his third application for writ of habeas corpus because the grand jury that returned the indictments was improperly formed, rendering all three indictments void. Specifi-

cally, appellant alleges the grand jury was impaneled in arbitrary violation of the code of criminal procedure because the trial court added an "impermissible, additional qualification for grand jury service, 'willingness to serve' prior to qualifying anyone on the venire." Appellant contends this issue is appropriate for review on pretrial habeas under *Ex parte Becker*, 459 S.W.2d 442 (Tex.Crim.App.1970).

In response, the State first contends this Court is not bound by *Becker*, because that case has "been eroded by time and intervening authority." Even if, as the State argues, the court of criminal appeals' habeas corpus jurisprudence has "taken a path" that will likely prompt the higher court to reexamine *Becker*, that is for the court of criminal appeals, not this Court, to decide. *See Patterson v. State*, 654 S.W.2d 825, 827 (Tex. App—Dallas 1983, pet. ref'd). We acknowledge the *Becker* court, on appeal from the trial court,[3] addressed Becker's complaint without first determining whether the complaint was cognizable on pretrial habeas. We likewise recognize that in *Becker*, unlike in this case, the court of criminal appeals was addressing an immediate existing problem in that the grand jury was still in session and presumably continuing to return indictments. *Becker*, 459 S.W.2d at 442 ("The question presented by this appeal is a rather difficult one requiring a prompt reply since the Dallas County Grand Jury involved is still in session."). However, since *Becker*, the court of criminal appeals has increasingly placed importance on determining cognizability as a threshold issue, and has cautioned courts that addressing the merits of a non-cognizable claim on pretrial habeas is a misuse of the writ. *Ellis*, 309 S.W.3d at 79; *see also Perry*, 483 S.W.3d at 895–97 (address-

ing cognizability of separation of powers claim as a threshold matter). Thus, we follow the court's instruction in *Ellis* and first determine whether appellant's particular claim is cognizable on pretrial habeas corpus.

When there is a valid statute or ordinance under which a prosecution may be brought, pretrial habeas is generally not available to test the sufficiency of the charging instrument. *Perry*, 483 S.W.3d at 895; *Weise*, 55 S.W.3d at 620. A few exceptions to this rule exist, but they have usually been found only when the complaint is such that it would render the proceedings void from the outset. *Ex parte Smith*, 152 S.W.3d 170, 171 (Tex. App—Dallas 2004), *aff'd*, 185 S.W.3d 887 (Tex.Crim.App.2006). One such exception is a complaint that the composition of the grand jury is illegal. *See Becker*, 459 S.W.2d at 443–44. When there has been "an arbitrary disregard" of statutes regarding the "selection and organization of a grand jury," a grand jury is without authority to return an indictment. *See id.* at 444. But not all complaints about the methods used to empanel a grand jury rise to the level of rendering the grand jury without authority to return an indictment. *See id.* at 445.

For example, the complained-of grand jury in *Becker* was impaneled using the jury commissioner system. *See Becker*, 459 S.W.2d at 442. Under that system, the grand jury commissioners submitted a list of names to the district judge in a sealed envelope, and the list was given to the sheriff. *Id.* at 443. Before the grand jury was impaneled, the district judge reordered the names and moved a number of people down the list including Rene Martinez and Lola Darby. *Id.* The dis-

---

**3.** At the time, intermediate courts of appeals did not have jurisdiction over criminal mat-

ters. Criminal jurisdiction was obtained by the intermediate courts of appeals in 1981.

trict judge explained that Martinez was too young and did not "reflect the beliefs and opinions held by the majority of Dallas County" and Darby, as a fourth woman on the grand jury, would make a "predominance of women." *Id.* Becker complained that the grand jury was illegally formed because the district judge did not select the first twelve names on the list prepared by the commissioners. The court of criminal appeals determined that although "custom and tradition" dictated the requirement that the district judge take the first twelve qualified persons on the list prepared by the commissioners, the statute contained no such requirement. Because it was not statutorily required, the court concluded it was an "irregularity" and the district judge's method was not of "sufficient gravity" to warrant holding the grand jury illegally constituted, "particularly without any showing of harm or prejudice." *Id.* at 445. Similarly, in a post-conviction challenge to the grand jury, the court of criminal appeals determined the trial court did not abuse its discretion by denying a motion to quash the indictment because the language in the code of criminal procedure mandating that grand jury commissioners be selected from different portions of the county was directory and not mandatory, and having four of the five grand jury commissioners from the City of Denton was "sufficient compliance" with the statute when the record did not show the proportion of residents of that county as compared to the population of the City of Denton. *Gentry v. State,* 770 S.W.2d 780, 794 (Tex.Crim.App.1988).

In contrast, the court of criminal appeals has determined certain grand juries were illegally constituted, rendering them without authority to return an indictment. For example, in *Ex parte Bustamente,* 138 Tex.Crim. 229, 137 S.W.2d 29, 31–32 (Tex. Crim.App.1940), the district judge discharged a twelve-member grand jury and later reconvened the grand jury with only eleven members. The court of criminal appeals determined the eleven-member grand jury was illegally formed because the Texas Constitution and the code of criminal procedure required a grand jury to be composed of twelve members. *See id.* In another case, the district judge did not appoint jury commissioners to select a grand jury for each term of court. *See Martinez v. State,* 134 Tex.Crim. 180, 114 S.W.2d 874, 875–77 (Tex.Crim.App.1938). Instead, he did so only when necessary to save "the county the expense of having a grand jury unless it became necessary to have one." *Id.* at 875. The court of criminal appeals determined that because the district judge's method of selecting the grand jury was a "plain violation of the express command" of the statute without "reason or justification," the grand jury was without authority to return the indictment. *See id.* at 877. Nor can jury commissioners appointed by the district judge during a court term "draw" three grand juries for three separate terms of court. *Woolen v. State,* 68 Tex.Crim. 189, 150 S.W. 1165, 1165 (Tex.Crim.App.1912). Even though the district judge thought it "more expedient" and would "save the county money," because the district judge "intentionally violated" the statute regarding the manner and selection of the grand jury, the second grand jury was "illegal" and without authority to return the indictment. *Id.* at 1167.

At the time the indictments in the cases before us were returned, the code of criminal procedure provided that the district judge could appoint jury commissioners to select grand jurors or could summon prospective grand jurors and, after trying the qualifications for and excuses from service, impanel a grand jury. *See* Act of May 25, 2001, 77th Leg., R.S., ch. 344, § 1, 2001 Tex. Gen. Laws 630, 630 (amended 2015)

(current version at TEX.CODE CRIM. PROC. ANN. arts. 19.01 (West Supp. 2015)).[4] When the required number summoned to serve are in attendance, the district judge shall proceed to test their qualifications. TEX.CODE CRIM. PROC. ANN. art. 19.21. To be qualified, a prospective grand juror must (1) be a citizen of Texas and the United States; (2) be able to read and write; (3) not have been convicted of misdemeanor theft or any felony; and (4) not be under indictment or other legal accusation for misdemeanor theft or any felony. *See id.* art. 19.23. And, the code of criminal procedure provides for qualified persons to be excused from grand jury service. In particular, a qualified person may ask to be excused from jury service if they are (1) older than 70 years; (2) responsible for the care of a child younger than 18 years; (3) a student of a public or private secondary school; (4) enrolled and in actual attendance at an institution of higher education; or (5) for any other reason the trial court determines is reasonable. *Id.* art. 19.25.

Here, the record shows the prospective grand jurors were randomly summoned by driver's licenses. After the clerk swore in the "80 or 85" prospective grand jurors who were summoned to serve on a grand jury in Collin County for the July 2015 term, the district judge addressed the prospective grand jurors as a group. He explained the duties of the grand jury, including that the grand jury sits for one day a week for a period of six months. The district judge also stated the statutory requirements to be qualified as a grand juror and asked any person who did not meet those requirements to come forward. At that time, several people came forward; some were not qualified, and some wanted to be excused. The district judge explained the difference between a disqualification and an excuse from service, told the prospective jurors the statutory excuses from service, and explained that some of the reasons he had already heard (moving to another state in a short time, sister was very ill and not expected to live) would qualify as a "very good reason" not to serve. The district judge then asked anyone who would like to invoke an excuse to come forward. At that time, because "there was a very long line" and the district judge knew some of the prospective jurors in line had a statutory excuse, the district judge asked the prospective jurors who had remained seated because they did not believe they had a disqualification or an excuse to indicate if they were "willing to serve." After questioning the prospective grand jurors in that group, the district judge verified they resided in various parts of Collin County and individually interrogated the prospective jurors regarding their qualifications to serve as grand jurors. The district judge again explained the grand jurors' time commitment and excused two of the remaining prospective grand jurors because the time commitment for serving on the grand jury would be a burden on their businesses.

The district judge then asked for any challenges to the remaining prospective grand jurors. Because no challenges were made, the district judge excused all of the prospective grand jurors except for the fourteen remaining prospective grand jurors, identified two of the fourteen as alternates, and impaneled the other twelve as the grand jury for the July 2015 term of court.

After reviewing the record and, in particular, the process used by the district judge, we conclude the complained-of method of selecting the grand jury is not

---

4. For convenience, we will cite to the current code of criminal procedure, as the amendments do not impact our analysis of appellant's issue.

a complaint that would render the grand jury illegally formed, i.e., void, and thus it is not cognizable on pretrial habeas. Appellant complains the grand jury was illegally constituted because the district judge impermissibly added an additional qualification for prospective grand jurors—willingness to serve—and, by doing so, undermined the randomness intended and imposed by chapter 19. However, it is clear from this record the district judge and prospective grand jurors understood this term to mean that, in light of the significant time commitment involved in serving on a grand jury, a person that was "willing to serve" was a person able to commit one day a week for six months. To conclude otherwise requires us to view the proceedings in a vacuum. Regardless of the wording of appellant's complaint, it relates to the district judge's discretion to excuse any person summoned for a "reasonable excuse." *See* Tex.Code Crim. Proc. Ann. art. 19.25. Because appellant's complaint does not relate to an intentional and arbitrary disregard of the "means and methods provided by the Legislature in the selection of grand juries," we conclude appellant's particular complaint regarding the selection of the grand jury, even if meritorious, would not render the grand jury without authority to proceed. Consequently, his particular complaint does not fall within the narrow exception allowing him to challenge his indictments prior to trial. Because appellant's particular complaint is not cognizable on pretrial habeas, we overrule appellant's third issue.

### Failure to Register

■ In his remaining issues, appellant contends the trial court erred by denying his first, second, and fourth applications for writ of habeas corpus. Each of these applications challenges his indictment for failure to register as an investment adviser representative under article 581–29(I) of the Texas Securities Act. In particular, appellant contends: (1) article 581–29(I) does not prohibit him from rendering services as an investment adviser representative without registering in Texas, because the registration requirement of article 581–29(I) does not apply to federally covered investment adviser representatives; (2) article 581–29(I) does not contain a valid definition of "investment adviser representative," rendering it unconstitutionally vague; and, (3) article 581–29(I) is facially unconstitutional because it is overly broad and vague.

Article 581–12 provides that a "person may not act or render services as an investment adviser representative for a certain investment adviser in this state unless the person is registered or submits a notice filing as an investment adviser representative for that particular investment adviser as provided in Section 18 or 12–1 of this Act." *See* Tex.Rev.Civ. Stat. Ann. art. 581–12(B) (West 2010). Article 581–4(P) defines an "investment adviser representative" as "each person or company who, for compensation, is employed, appointed, or authorized by an investment adviser to solicit clients for the investment adviser or who, on behalf of an investment adviser, provides investment advice, directly or through subagents, as defined by Board rule, to the investment adviser's clients." *See* Tex.Rev.Civ. Stat. Ann. art. 581–4(P). Article 581–12–1 provides an exception to the registration requirement for representatives of federally covered investment advisers. A representative of a federally covered investment adviser is authorized to render services as an investment adviser representative upon filing a notice with the Commissioner and paying a fee. *See* Tex.Rev.Civ. Stat. Ann. art. 581–12–1.

The registration required includes filing a written application with such information as the representative's name, address, pre-

vious history, record, and associations. *See* Tex.Rev.Civ. Stat. Ann. art. 581–18. Article 581–13 fleshes out the registration requirements, which may include a written examination to test an applicant's qualifications and competency to deliver investment advice. *See* Tex.Rev.Civ. Stat. Ann. art. 581–13. Article 581–23–1 grants the Commissioner power to issue an order assessing an administrative fine for violations of the Act. *See* Tex.Rev.Civ. Stat. Ann. art. 581–23–1 (West Supp.2015). The fine is "in addition to any other remedies." *Id.* Most importantly for resolution of this appeal, article 581–29(I) provides that any person who shall "[r]ender services as an investment adviser or an investment adviser representative without being registered as required by this Act shall be deemed guilty of a felony of the third degree." *See* Tex.Rev.Civ. Stat. Ann. art. 581–29(I).

Evidence submitted in connection with the writ applications shows that appellant referred several of his legal clients to Mowery Capital Management, L.L.C. which, in turn, paid appellant a commission on the fees the client generated for Mowery. Between 2008 and June of 2012, Mowery was registered as an investment adviser with the Securities and Exchange Commission. As a result of changes in federal law, the SEC's jurisdiction was changed from regulating investment advisers with $25,000,000 or more under management to regulating investment advisers with $100,000,000 or more under management. *See* Dodd–Frank Wall Street Reform and Consumer Protection Act, Pub.L. No. 111–203, § 410, 124 Stat. 1376 (2010) (amending 15 USCA § 80b–3a (West Supp.2015)). Because Mowery managed less than $100,000,000, it was no longer eligible for SEC registration. The federal government gave institutions until June 28, 2012, to make the transition from federal to state registration. *See* 17 C.F.R.

§ 275.203A–5 (2011). Mowery's registration with the State of Texas was approved on June 25, 2012. Mowery did not file its form to withdraw from federal registration until October 11, 2012. Appellant is charged with referring clients to Mowery on July 18, 2012. At that time, appellant was not registered with the State nor had he filed a notice with the State indicating that he was federally covered. On May 2, 2014, appellant and Texas Securities Commissioner John Morgan entered into a Disciplinary Order fining appellant $1,000 for soliciting clients without being registered with the Securities Board. As part of the agreed findings of fact in the Disciplinary Order, the parties agreed that Mowery transitioned back to state regulation on June 25, 2012.

In his first issue, appellant contends the trial court erred in denying his first application for writ of habeas corpus because he was at all relevant times a representative of a federally covered investment adviser, he was not required to register under the Texas Securities Act, and thus there is no valid statute under which he could be charged. The State responds that the issue is not cognizable on a pretrial habeas appeal because it (1) seeks to test the sufficiency of the evidence, (2) attempts to construe the meaning and application of article 581–29(I), and (3) needs the development of a trial record to be resolved. We agree with the State.

■ Appellant acknowledges that pretrial habeas is not generally available "to construe the meaning and application of the statute defining the offense charged." *Ellis,* 309 S.W.3d at 79. He contends, however, that construing the statute is unnecessary because we would be applying the statute to an undisputed set of facts. As support for his position, he cites a single case—*Ex parte Psaroudis,* 508

S.W.2d 390 (Tex.Crim.App.1974). In *Psaroudis*, the court of criminal appeals considered on pretrial habeas whether hashish was excluded from the Texas Controlled Substances Act. *Id.* at 390. The court reasoned that if there was no valid statute prohibiting Psaroudis's admitted conduct, then he was entitled to be discharged. *See id.* at 391. Appellant contends that, like *Psaroudis*, he should be entitled to a pretrial determination of whether the Texas Securities Act's registration requirements apply to him because if they do not, then there is no valid statute under which he can be charged.

However, unlike *Psaroudis*, the facts in this case are in dispute, and we would be required to construe the meaning of article 581–29(I), as well as federal statutes and regulations. Appellant contends it is undisputed that Mowery was federally covered on July 18, 2012. But appellant agreed to a finding of fact in his settlement with the securities commissioner that Mowery transitioned back to state regulation on June 25, 2012. Furthermore, the State disputes the effect of Mowery's federal registration during the period between June 25, 2012, when it re-registered with the State and October 11, 2012, when it withdrew its federal registration. We note that SEC regulations provided that during the transitions triggered by the Dodd–Frank reforms, investment advisers were required to comply with both applicable state and federal laws. *See* 17 C.F.R. §§ 275.203A–1(b)(2), 275.203A–5(c)(1) (2011). We conclude *Psaroudis* is distinguishable from the current case.

Finally, we briefly address appellant's contention in his reply brief that the disposition of *Perry* supports his position. We conclude it does not. *Perry* reaffirms that "as applied" challenges are not cognizable on pretrial habeas except for certain carefully limited exceptions. *See Perry*, 483 S.W.3d at 895–98. The court concluded that cases involving criminal charges arising from an elected official's performance of his duties and implicating the separation of powers qualify as such an exception. *See id.* at 898. In contrast, appellant's charges do not arise out of his duties as an elected official but rather from his conduct as a private citizen.

In light of the clear and recent pronouncements from the court of criminal appeals detailing the limits of pretrial habeas review, we conclude appellant's first issue is not cognizable on appeal of a pretrial writ because resolving it would require that we construe the statute under which appellant is charged, it would require us to resolve disputed factual controversies, and it would require us to apply the statute to appellant's particular circumstances notwithstanding the existence of an adequate remedy by appeal after trial. *See Perry*, 483 S.W.3d at 895; *Weise*, 55 S.W.3d at 619. We overrule appellant's first issue.

In his second issue, appellant contends the trial court erred in denying his second application for writ of habeas corpus because article 581–29(I) has been rendered unconstitutionally vague by changes in federal law that have preempted the definition of "investment adviser representative" incorporated from article 581–4(P). Appellant contends the federal government's definition of "investment adviser representative," found at 17 C.F.R. § 275.203A–3(a)(1) (2011), has preempted the definition of "investment adviser representative" found in article 581–4(P) of the Texas Securities Act. Thus, according to appellant, because there is either no definition of "investment adviser representative" that applies for article 581–29(I), or else there are competing state and federal definitions, article 581–29(I) is unconstitutionally vague. Again, the State counters that

the issue is not cognizable. We again agree with the State.

■ A facial vagueness challenge to the constitutionality of a statute is cognizable in pretrial habeas proceedings. *Perry,* 483 S.W.3d at 895; *Ellis,* 309 S.W.3d at 79. In this case, however, appellant cannot reach the issue of unconstitutional vagueness without first obtaining a finding that the federal definition of "investment adviser representative" preempts the state definition. Appellant cites no authority showing that issues of alleged federal preemption are cognizable on appeal in pretrial habeas proceedings. He also fails to present authority allowing an appellate court to construe and apply statutes if the end result would be to create a constitutional issue that would be reviewable on pretrial habeas appeal. Appellant requests a far-reaching and exhaustive review of federal and state statutes and regulations that exceeds our role as a court of review on a pretrial habeas writ. *See Perry,* 483 S.W.3d at 895. Appellant admits as much in his brief wherein he explains: "[t]he definition at Rule 203A-3 to the Investment Advisers Act of 1940—not the definition at Section 4(P) of the Act—is the definition that applies to this case.... Consequently, the crux of the issue, and the basis for the vagueness challenge, is determining which definition applies."

In light of the mandates from the court of criminal appeals limiting the extraordinary remedy of pretrial habeas review, we decline to construe the various statutes at issue to determine which definition applies to appellant's case. *See Perry,* 483 S.W.3d at 895; *Weise,* 55 S.W.3d at 619. We overrule appellant's second issue.

■ In his fourth issue, appellant contends the trial court erred by not granting his fourth application for writ of habeas corpus because article 581-29(I) of the Texas Securities Act is so overbroad and vague that it is facially unconstitutional. A defendant may file a pretrial application for a writ of habeas corpus to conduct a facial challenge to the constitutionality of a statute that defines the offense charged. *Ex parte Thompson,* 442 S.W.3d 325, 333 (Tex.Crim.App.2014). A facial challenge attacks the statute itself rather than the statute's application to the defendant. *Peraza v. State,* 467 S.W.3d 508, 514 (Tex.Crim.App.2015). Facial constitutional challenges are a matter of law that we review de novo. *Ex parte Lo,* 424 S.W.3d 10, 14 (Tex.Crim.App.2013). When an appellant brings both overbreadth and vagueness facial constitutional challenges, we address the overbreadth challenge first. *Duncantell v. State,* 230 S.W.3d 835, 843 (Tex.App.—Houston [14th Dist.] 2007, pet. ref'd).

■ As to overbreadth, appellant specifically asserts that article 581-29(I) is unconstitutional because it incorporates an overly broad definition of "investment adviser representative" from article 581-4(P) of the securities statute, thereby regulating commercial speech. He further argues that because the statute regulates commercial speech protected by the First Amendment it must, but does not, satisfy the test for such regulations outlined by the United States Supreme Court in *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980).

■ When it implicates the First Amendment, a law may be invalidated as overbroad if a substantial number of its applications are unconstitutional judged in relation to the statute's plainly legitimate sweep. *United States v. Stevens,* 559 U.S. 460, 473, 130 S.Ct. 1577, 176 L.Ed.2d 435 (2010). "Commercial speech" is speech which does no more than propose a com-

mercial transaction. *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.,* 425 U.S. 748, 762, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). We agree with appellant that a statute requiring one to register with the State before soliciting clients for an investment adviser constitutes a regulation of purely commercial speech.

 Commercial speech enjoys a lesser standard of constitutional protection. *Ohralik v. Ohio State Bar Ass'n,* 436 U.S. 447, 455–56, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978). It is given "a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values, while allowing modes of regulation that might be impermissible in the realm of noncommercial expression." *Id.* at 456. Government regulation of commercial speech does not abridge First Amendment rights merely because the conduct regulated is initiated, evidenced, or carried out by means of spoken, written, or printed language. *Id.* Among the communications that can be regulated without offending the First Amendment is the exchange of information about securities. *Id.*

 In their briefs, the parties focus their analysis on whether the test detailed in *Central Hudson* has been met in determining whether the statute is facially overbroad. But the overbreadth doctrine does not apply to commercial speech. *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 496–97, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); *see also Bates v. State Bar of Ariz.,* 433 U.S. 350, 380, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977) (stating overbreadth analysis applies weakly, if at all, in ordinary commercial context). In fact, the court in *Central Hudson* disclaimed any intent to apply the overbreadth doctrine in its discussion of the commercial speech at issue. *See Cent.*

*Hudson,* 447 U.S. at 565 n. 8, 100 S.Ct. 2343. Because overbreadth challenges do not apply to commercial speech, we conclude appellant's overbreadth challenge to article 581–29(I) lacks merit.

Having done so, we turn to appellant's argument that article 581–29(I) is unconstitutionally vague because the statute (1) relies on the undefined term "solicit" in article 581–4(P), and (2) lacks a scienter requirement. Because of these alleged deficiencies, appellant contends article 581–29(I) fails to give fair notice to those whose conduct is covered by the statute and allows for arbitrary enforcement. We disagree.

 The Due Process Clause of the Fourteenth Amendment requires that penal statutes define a criminal offense with sufficient specificity to inform an ordinary person whether their conduct is prohibited and to provide minimal guidelines for law enforcement so as to prevent arbitrary and discriminatory enforcement. *State v. Edmond,* 933 S.W.2d 120, 125 (Tex.Crim.App. 1996). A statute is unconstitutionally vague if persons of common intelligence must necessarily guess at its meaning and differ about its application. *Hoffman Estates,* 455 U.S. at 498, 102 S.Ct. 1186. The statute does not require mathematical precision, only that it give fair warning in light of common understanding and practices. *Ex parte Anderson,* 902 S.W.2d 695, 699 (Tex.App.—Austin 1995, pet. ref'd). When a statute implicates First Amendment rights, the law must be sufficiently definite to avoid chilling protected expression. *Long v. State,* 931 S.W.2d 285, 287 (Tex.Crim.App.1996). A defendant may raise a facial challenge to the vagueness of a law involving the First Amendment even though the law may not be unconstitutional as applied to the defendant's conduct. *Id.* at 288.

Appellant first contends article 581–29(I) is vague because the definition of "investment adviser representative" incorporated into article 581–29(I) from article 581–4(P) does not define the word "solicit." Appellant argues the use of the word "solicit" without a limiting definition renders article 581–29(I) unconstitutionally vague because "solicit" does not indicate what forms of communication are regulated, what limitations exist, and what content will trigger criminal liability. In support of this argument, appellant cites an online dictionary that defines "solicit" simply as "to ask for (something, such as money or help) from people, companies, etc.; to ask (a person or group) for money, help, etc.; to offer to have sex with (someone) in return for money." *See Solicit*, Merriam–Webster, *http://www.merriam-webster.com/dictionary/solicit* (last visited June 1, 2016). As a fuller definition, Merriam–Webster offers: "to make petition to; to approach with a request or plea; to urge (as one's cause) strongly; to entice or lure especially into evil; to proposition (someone) especially as or in the character of a prostitute; to try to obtain by usually urgent request or pleas." *See id.* We note that other dictionaries offer similar definitions. *See, e.g., Solicitation*, BLACK'S LAW DICTIONARY (10th ed.2014) (solicitation is "[t]he act or an instance of requesting or seeking to obtain something; a request or petition. . . . An attempt or effort to gain business. . . .").

But words are not vague and indefinite if they are defined in dictionaries and have meanings so well known as to be understood by a person of ordinary intelligence. *Watson v. State*, 369 S.W.3d 865, 870 (Tex.Crim.App.2012). And, in particular, a statute is not rendered unconstitutionally vague for using the word "solicit" without providing a definition. *See Page v. State*, 492 S.W.2d 573, 575–76 (Tex.Crim.

App.1972); *Coutlakis v. State*, 160 Tex. Crim. 249, 268 S.W.2d 192, 198 (1954) (op. on reh'g). The word "solicit" is "one of common usage and its meaning is simple and not subject to any peculiar usage." *Coutlakis*, 268 S.W.2d at 198. Because the word "solicit" is not vague, indefinite, or uncertain and its import is a matter understood by people who understand the meaning of the language, we conclude article 581–29(I) is not rendered vague by the legislature's decision not to provide a definition of "solicit." *See Page*, 492 S.W.2d at 575–76; *Coutlakis*, 268 S.W.2d at 198.

Second, appellant contends article 581–29(I) fails to establish a culpable mental state and, exacerbated by the alleged vagueness of the definition of "investment adviser representative" in article 581–4(P), the lack of a scienter requirement renders article 581–29(I) unconstitutionally vague. Whether subsection (I) requires a culpable mental state, and if so, the level of culpability required to constitute an offense, is an issue of first impression.

A scienter requirement, such as a requirement that the prohibited conduct be done knowingly and intentionally, can mitigate problems with vague statutory language. *See Hoffman Estates*, 455 U.S. at 499, 102 S.Ct. 1186; *Garcia v. State*, 212 S.W.3d 877, 889 (Tex.App.—Austin 2006, no pet.). Unless the statute defining the offense provides otherwise, Titles 1, 2, and 3 of the Texas Penal Code generally apply to offenses defined by other statutes. *See* TEX. PENAL CODE ANN. § 1.03(b) (West 2011). The Texas Securities Act does not state that Titles 1, 2, and 3 of the penal code are inapplicable to offenses created under the Act. Within Title 2, section 6.02(b) provides: "If the definition of an offense does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental ele-

ment." *Id.* at § 6.02(b). The legislature's intent to dispense with a culpable mental state must be manifest, and mere silence of a statute about whether a culpable mental state is an element of the offense leaves a presumption that one is required. *Aguirre v. State*, 22 S.W.3d 463, 472 (Tex. Crim.App.1999). Section 6.02(c) goes on to provide the necessary mental state: "If the definition of an offense does not prescribe a culpable mental state, but one is nevertheless required under Subsection (b), intent, knowledge, or recklessness suffices to establish criminal responsibility." TEX. PENAL CODE ANN. § 6.02(c).

Other subsections of article 581–29 have been interpreted as requiring a culpable mental state. *See Koah v. State*, 604 S.W.2d 156, 160 (Tex.Crim.App. [Panel Op.] 1980) (holding penal code section 6.02 applies to article 581–29(A) and (C) and that article 581–29 neither prescribes nor plainly dispenses with culpable mental state). Appellant contends that the failure of the statute to articulate a culpable mental state indicates that strict liability must have been intended. We agree that the failure-to-register element of the offense does not require a culpable mental state. *See Shappley v. State*, 520 S.W.2d 766, 769 (Tex.Crim.App.1974) (finding the legislature clearly intended "to impose criminal sanctions for almost any dealing in securities without a license.").

■ The question, however, remains as to whether a culpable mental state is required as to the element of rendering services as an investment adviser representative while unregistered. There are three possible conduct elements that may trigger a required mental state for an act to constitute an offense: (1) the nature of the offense; (2) the result of the conduct; or (3) the circumstances surrounding the conduct. *See* TEX. PENAL CODE ANN. § 6.03; *McQueen v. State*, 781 S.W.2d 600, 603

(Tex.Crim.App.1989). The State must prove a culpable mental state only as it relates to the action prohibited by the statute. *See Cook v. State*, 824 S.W.2d 634, 637 (Tex.App.—Dallas 1991), *pet. ref'd*, 828 S.W.2d 11 (Tex.Crim.App.1992).

■ This Court has concluded previously that selling securities by fraudulent means is the type of offense that requires a culpable mental state involving the circumstances surrounding the conduct. *See id.* at 638. We further conclude that rendering services as an investment adviser or investment adviser representative in violation of article 581–29 requires a culpable mental state involving the circumstances surrounding the conduct.

■ The act prohibited by article 581–29(I) is the rendering of services as an investment adviser representative without being registered. The Texas Securities Act does not require one to know he must register if he intends to serve as an investment adviser representative. It is sufficient for the State to show that one knowingly rendered services as an investment adviser or investment adviser representative without being registered. *See Robinson v. State*, 466 S.W.3d 166, 171–72 (Tex. Crim.App.2015) (concluding failure to register as sex offender is "circumstances of conduct" offense requiring proof of culpable mental states of knowledge or recklessness only on duty-to-register element of offense); *Tovar v. State*, 978 S.W.2d 584, 587 (Tex.Crim.App.1998) (concluding defendant could be convicted of violating Open Meetings Act upon showing he knowingly called closed meeting even without proof defendant knew closed meeting was prohibited). Because a culpable mental state is required on the rendering services element, the law is not unconstitutionally vague on this ground. We overrule appellant's fourth issue.

Having concluded that appellant's first, second, and third issues are not cognizable on pretrial habeas and that appellant's fourth issue lacks merit, we affirm the trial court's orders denying the relief sought by appellant.

Fillmore, J., concurring, joined by Schenck, J.

ROBERT M. FILLMORE, JUSTICE, concurring

I join the Court's opinion and judgment, but write separately to address an issue related to appellant's third application for writ of habeas corpus that was not addressed by the Court.

In order for a complaint regarding the manner in which a grand jury was constituted to be cognizable through pretrial writ of habeas corpus, the organization of the grand jury "must have been void as distinguished from voidable." *Ex parte Becker*, 459 S.W.2d 442, 443 (Tex.Crim. App.1970). As discussed in the Court's opinion, the organization of a grand jury can be void when there has been an arbitrary disregard by the trial court of the statutes governing the selection and organization of the grand jury, vitiating and rendering the grand jury without authority. *Id.* at 444. The Court concludes, and I agree, that the actions by the trial court in impaneling the grand jury in this case did not constitute such an arbitrary disregard of the statutes applicable to the selection of the grand jury[1] as to render appellant's complaint cognizable through a pretrial writ of habeas corpus.

However, after determining the trial court's failure to comply with the statutory requirements governing the selection of the grand jury constituted an "irregularity," rather than an arbitrary disregard of the statute, the *Becker* court concluded the irregularity was "not of sufficient gravity to warrant holding the Grand Jury illegally constituted rendering void ipso facto every indictment returned by such Grand Jury, particularly without any showing of harm or prejudice." *Id.* at 445. In our opinion in this case, we do not address whether appellant's third application for writ of habeas corpus was cognizable on this basis.

The trial court's actions in impaneling the grand jury in this case were a departure from the applicable statutory requirements, similar to the "irregularity" in *Becker*. However, the record reflects no showing of particularized harm to appellant from the trial court's actions. Appellant complains of statutory, not constitutional, error and is required to show any error by the trial court affected his substantial rights. *See* Tex.R.App. P. 44.2(b); *Becker*, 459 S.W.2d at 445. On the record before us, appellant has failed to establish his third application for writ of habeas corpus is cognizable at this stage of the proceeding on the basis he was harmed by an "irregularity" in the proceedings that resulted in impaneling of the grand jury.

1. At the time the grand jury was impaneled, the relevant statutes were Act of May 5, 2001, 77th Leg., R.S., ch. 344, § 1, 2001 Tex. Gen. Laws 630, 630 (amended 2015) (current version at Tex.Code Crim. Proc. Ann. art. 19.01 (West Supp.2015)); Act of May 25, 2005, 79th Leg., R.S., ch. 801, § 2, 2005 Tex. Gen. Laws 2763, 2763 (amended 2015) (current version at Tex.Code Crim. Proc. Ann. art. 19.08 (West Supp.2015)); Tex.Code Crim. Proc. Ann. arts. 19.21–22, 19.24–25 (West 2015); and Act of May 13, 1969, 61st Leg., R.S., ch. 412, § 6, 1969 Tex. Gen. Laws 1364, 1366 (amended 2015) (current version at Tex.Code Crim. Proc. Ann. art. 19.23 (West Supp.2015)).